DAVIS B. RICH *v.* SAMUEL ELLIOT.

ADDISON,
*January*,
1838.

A grant or exception of a certain number of acres off of the west end of
a lot, in rectangular form, and the sides being towards the cardinal points,
is, in legal intendment, to be divided from the lot by a line parallel with
the lot lines.

Parol evidence is not admissible to contradict such intendment, and show
that the parties intended the line to be neither straight nor parallel with
the lot lines.

EJECTMENT. The plaintiff claimed title to the land in question under a deed from the defendant to him, in which the land conveyed was described as " all the first division, " drawn to the right of Ebenezer Walbridge, except forty-six " acres and one fourth, off the west end of said lot."

On the trial in the county court, the plaintiff gave in evidence the defendant's deed to him, and it was admitted that, if the lot referred to in the deed were divided by a straight line, parallel with the west line of the lot, in such manner as to leave to the defendant the number of acres by him reserved, the premises sued for would be conveyed to the plaintiff by the deed aforesaid. The defendant's possession of the land in question was also admitted.

The defendant then offered evidence, tending to show that said lot had been anciently divided between several owners, by a line neither straight nor parallel with the west end thereof, by which division the westwardly portion contained the number of acres reserved in the defendant's deed, and had been occupied and owned by defendant, and the easterly portion of the same, containing the residue of the lot, had been owned and occupied by one Philips ; that the defendant and Philips had always occupied to this last mentioned line, upon which their division fence had been erected ; that afterwards, the whole lot becoming the property of the defendant, he had conveyed, by the deed aforesaid, the easterly section to the plaintiff ; that before this deed was executed, the last mentioned line was shown to the plaintiff, as the division line between the parties, and that at the time of executing the deed, it was understood that this line was to be the dividing line between them ; that plaintiff stated he was purchasing only the Philip's farm, and that this was said with reference to the land in question, the boundaries between which and the Philip's farm had been pointed out, and that

the defendant had possessed the land in question ever since.

It was conceded that, if this last mentioned division line should be adopted, the plaintiff had derived no title to the land in question, by the deed aforesaid.

The plaintiff objected to the admission of this evidence, upon the ground that it tended to vary the legal effect of the deed, but the court overruled the objection and admitted the evidence, and the jury returned a verdict for the defendant.

To which decision of the court, in admitting the evidence, the plaintiff excepted.

*C. Linsley*, and *J. Bradley*, for plaintiff.

1. The reservation in the deed of forty-six and one fourth acres, from the west end, is a reservation by a line parallel with the west line. This is the natural and reasonable construction of the deed, and any other principle, adopted in such cases, would leave similar questions wholly indefinite and vague.

2. If this be the legitimate effect of the deed, it cannot be varied by parol testimony. If it be admissible to adduce parol evidence, to enlarge, diminish, or vary the force of words, and in a deed in relation to boundaries, it is difficult to see what part of a deed may not be affected by parol. If there is an ambiguity in this case, it is one that must be explained by the instrument itself.

*H. Needham*, for defendant.

The opinion of the Court was delivered by

REDFIELD, J.—The general rule of law upon the subject of admitting oral evidence to contradict, vary or explain a written instrument is too well settled to require confirmation. The only difficulty, as in most cases, consists in the application of the rule, and in fixing the extent of the exceptions.

It is well settled that oral evidence may be received to explain a latent ambiguity, or to define the extent of the subject matter to which any written instrument refers, or to explain the import of equivocal terms. But it is also well settled that a patent ambiguity cannot be explained by oral testimony. So if a deed, or other instrument in writing, be so expressed, as to leave it wholly uncertain what was the intention of the parties, the instrument must remain inoperative. Life cannot be infused into it by oral eveidence.

The words of description used in this deed are, all the

right of the first division of Walbridge, " except 46¼ acres off of the west end." The question arises in relation to the construction of the exception. The terms used do not fix the form in which the land excepted is to be separated from the lot. It might be done by a line either straight or curved, regular or irregular, parallel or oblique to the lot lines. But, although the description does not *in terms* fix the form of the exception, yet, *by legal intendment,* the exception is fixed.

It was decided by this court, two years ago, in relation to the levy of an execution, that where the lot was in rectangular form, a description of a certain number of acres, off the east end, was a sufficient description, by "metes and bounds," and should be intended to be by a line parallel with the lot line. The same was decided in the case of *Beecher* v. *Parmele et al.* 9 Vt. R. 352.

In the present case, it being conceded, that the lot is in rectangular form, having its sides towards the cardinal points, there is no uncertainty either in the terms, or in thier application to the subject matter. All is definite and certain. And it is well settled, that oral testimony can no more be received to rebut or contradict a legal intendment, than it can to contradict the express terms of a written instrument. Hence if a note, payable in specific articles on demand, mention no place of payment, it is not competent to prove by parol, that the parties intended the note to be payable at any other place, than that which the law implies, which in some cases will be the domicil of the maker, and in others, the place at which the note is made.

Under the circumstances of the case, to admit oral evidence of the manner in which this lot had been formerly holden and occupied, is nothing less than a resort to conjecture, to determine the intention of the parties. It would surely be safer and more rational to receive evidence of the declared intention of the parties at the time of making the contract, which could not be allowed. The situation of the subject matter can never be resorted to as the basis of construction, except where the terms used may have one import with reference to one condition of the parties or the subject matter, and a different import with reference to a different condition. In the case of the promissory note just

ADDISON,
*January,*
1838.

Rich
*v.*
Elliot.

alluded to, the place of payment not being fixed, it must depend upon the place of deposit of the articles to be paid, whether they are bulky or easy of transportation, or the domicil of the parties. But when these incidents are ascertained, the law fixes the place of payment. So in this case, if the lot had not been in rectangular form, or being so, one of the angles of the parallelogram had been due west, it might have required a different rule of construction, or perhaps have rendered the deed wholly inoperative at law. But in the present case no such difficulty occurs, and the deed must have its legal effect and operation. The parties evidently mistook the legal effect of the instrument. The mistake would no doubt find a ready correction in the appropriate tribunal, if properly established.

In those states, where no equity jurisdiction exists, mistakes of this character are frequently corrected in the courts of common law. *Brown* v. *Gilman*, 13 Mass. R. 161. But to allow of that here, would be to confound the appropriate limits of jurisdiction, between the courts of common law and chancery. It will be readily admitted that some cases exist at common law, not easily reconcileable with the general rule upon the subject,—but such cases have not been followed. The subject is lucidly discussed, and put upon its true ground in *Claremont* v. *Carleton*, 2 N. H. R. 373, by *Woodbury*, J. The suggestion of Mr. Justice *Story* of an intermediate class of cases, between latent and patent ambiguities, may be in some sense well founded. Terms of indefinite signification may always be explained by oral evidence, as a foreign language may be translated by an interpreter, which is common, and necessary, where the instrument is not in the vernacular. 1 Mason, 11. In mercantile contracts, mere memoranda, or outlines of contracts, have been permitted to be explained by oral evidence of the interpretation given by merchants to such memoranda, which exception seems to belong to the class of Mr. Justice *Story*. *Clark* v. *Russell*, 3 Dallas' R. 421. But no case, it is believed, will be found, where testimony has been received to vary the legal import of the instrument. See the cases cited, 3 Starkie's evidence, 1026, and note by the American editor.

This subject has been much discussed in the United States

supreme court, in relation to what is termed, in the cant language of the west, " *calls.*" The term may be well translated into the eastern dialect, by the word " *pitch.*" It is a designation of land, where the party has an election. Oral evidence has there been received to ascertain the actual and relative position of the natural objects referred to ; but that court have held, that the construction of the instrument and its application to the territory, when that is ascertained, is a mere intendment of law. If the terms used have a definite and intelligible signification, it is not competent to show by proof, *aliunde,* that they were intended to have a different effect, and to include different territory. *Meredith* v. *Picket,* 5 Cond. R. 686. *McDowell* v. *Peyton,* 10 Wheaton, 454. Note in *Wilson* v. *Mason,* 1 Peters' Cond. R. 242.

Judgment of the County Court reversed, and a new trial granted.