FEBRUARY TERM, 1854; CIRCUIT SESSION IN SEPTEMBER, 1854;
FEBRUARY TERM, 1855;
###### AND AT THE
CIRCUIT SESSION IN SEPTEMBER, 1855.

---

### PRESENT,

HON. ISAAC F. REDFIELD, CHIEF JUDGE.

HON. PIERPOINT ISHAM, ⎱
HON. MILO L. BENNETT, ⎰ ASSISTANT JUDGES.

---

NATHAN W. PATCH AND WIFE *v.* ELIJAH KEELER AND EBE-
NEZER N. BRIGGS.

*Sufficiency and construction of report of commissioners to set out
dower, &c. Ejectment. Constructive possession of grantee of
land.*

The commissioners to set out the dower of the widow of E. W. returned that they had set
out to her "two stalls at the southwest corner of the horse barn, and twelve feet square
"over said stalls for hay; also three west rows of apple-trees on the west side of the or-

"chard, running north and south in the centre between the third and fourth rows." In reference to the stalls, &c., *it was held*, that that the proceedings of the commissioners were not void for uncertainty; and that an action of ejectment would lie to recover the possession of the premises described.

In reference to the three rows of apple-trees, *it was held*, that the territory upon which they stood and all west of a line running north and south between the third and fourth rows was set out, and not simply a right to take and use the fruit from the trees.

If the grantor in an absolute deed is permitted by the grantee to remain in possession of the granted premises, he becomes his *quasi* tenant, and both may be joined as defendants in an action of ejectment brought by a third person claiming to own the premises.

EJECTMENT for a piece of land described by metes and bounds, "also two stalls at the south-west corner of the horse barn, stand- "ing a few rods westerly of the small barn above described, and "near the south-west corner of the piece of land above described. "Also twelve feet square on the loft over said stalls for hay, being "a portion of the same premises set off as widow's dower to Mary "Wood, from the estate of Elijah Wood." Plea, the general issue; trial by the court, April Term, 1853,—PIERPOINT, J., presiding.

It appeared that Elijah Wood died intestate, at Brandon, in 1834, seized of the premises described in the declaration, and left a widow, Mary Wood, and six children, among whom was Jane M. Wood, who afterwards intermarried with Nathan W. Patch, one of the plaintiffs. Commissioners were appointed by the probate court to set out the dower of the widow, from whose report it appeared that they had set out to her, with other premises, "the "north half of the cellar, parallel with the north corner of the chim- "ney; two stalls at the south-west corner of the horse-barn, and "twelve feet square over said stalls for hay; also three west rows "of apple trees on the west side of the orchard, running north and "south in the center between the third and fourth rows." The widow died in 1849, after which commissioners were appointed to divide the reversion who assigned to the plaintiffs as a part of their share or interest in said reversion, "two stalls at the south-west "corner of the horse-barn, and twelve feet square over the stalls "for hay, also three rows of apple-trees on the west side or the "orchard, running north and south in the centre between the third "and fourth rows," and to Elmer R. Wood, who had become the owner of the shares of the other heirs, all the remainder of the reversion not assigned to the plaintiffs. In 1841, the defendant

Keeler became entitled, by conveyance from the other heirs of Elijah Wood, through the said Elmer R. Wood, to the premises in the vicinity of and embracing said barn and apple-trees, but in his deed there was the following reservation, " reserving from the " premises above described three west rows of apple-trees in the " orchard, two stalls in the south-west corner of the barn and twelve "feet square over the stalls to put hay on, for the benefit of Mary " Wood."

It further appeared that the boundaries of the piece of land described in the declaration, enclosed three rows of apple-trees in the west part of the orchard on the home farm of which Elijah Wood died seized, that said orchard was separate and at a distance from the land set off by metes and bounds by the committee to set off the widow's dower; that during the lifetime of the widow Mary Wood, she gathered the apples from the three rows of trees, and the defendant Keeler, and his grantees cultivated the land upon which the trees grew.

It further appeared that the defendant, Keeler, after the widow's death, in 1849, took possession of the premises, and excluded the plaintiffs therefrom, and that on the 25th of August, 1851, he gave to the defendant Briggs, a deed of said premises.

Upon the foregoing facts, the county court rendered judgment for the defendants, to which the plaintiffs excepted.

*Parker & Nicholson,* for the plaintiffs.

*E. N. Briggs,* for the defendants.

The opinion of the court was delivered at the circuit session in September by

BENNETT, J. This is an action of ejectment brought to recover the possession of a certain parcel of land described by metes and bounds in the declaration, and also of two stalls in the horse-barn of the intestate Elijah Wood, in his life time, at the south-west corner of the same, and twelve feet square over said stalls for hay.

The title of Elijah Wood in his life time was admitted, and the wife of N. W. Patch was one of six heirs to his estate, and as such entitled to one-sixth of the estate. The plaintiffs claim title to the premises sued for as being a part of the reversion in the widow's

dower, one sixth of which was set to the plaintiff's wife. It appears that no division of the estate was ever made among the heirs, except of the reversion of the dower. The language used in setting off the widow's dower, and in dividing the reversion is substantially the same, and the result of this action must depend upon the effect which is. to be given them. The committee set off to the widow " two stalls at the south-west corner of the horse-barn, and twelve feet square over said stalls for hay, *also three west rows of apple-trees on the west side of the orchard, running north and south in the centre between the third and fourth rows.*"

These are all set off to the plaintiff's wife in the division by the same description. We apprehend there is little ground to claim that the setting off the two stalls and the space above them *is void for uncertainty.* They are described as being two stalls at the south-west corner of the horse-barn, and the space above them as twelve feet square. The identity of the subject matter of a deed rests in parol, and the same rule applies to distributions of estates in the probate court. In this case the most absolute certainty could be given as to the identity of the stalls and the space above, by the introduction of parol evidence, as much so as if a particular chamber in the house, designated as the north-west chamber, had been set to the widow. It is quite clear that it was the intent to give to the widow something more than a license to use the stalls and the twelve feet square of the scaffold above, and that she took in them a life estate; and there can be as little doubt that they are the subject of an action of ejectment. It was adjudged in the case of *Lady Dacres,* Lev. 58, that ejectment lay for a stable, because it was a word of a determinate signification, and could be delivered upon a writ of execution. So, for a chamber in the second story of a particular house. There was, it is said, certainty enough to direct the sheriff in the execution. 2 Bacon Abridgment, 420. The stalls and the space above, are so particularly specified that the sheriff could well give possession of them, and when this can be done, as a general rule, an action of ejectment lies to recover the possession.

In regard to the three rows of apple-trees, there may be perhaps more doubt. The declaration describes the land by courses and distances, beginning at a given point; and the case finds that the

land described in the declaration includes the three rows of apple-trees in the west part of the orchard on the home farm of the intestate. The question then arises as to the legal effect of the language used in setting out this part of the widow's dower. It should be such, if it can be, consistently with the rules of law, as will carry out the intention of the commissioners, who set out the dower. It might be competent to set out to the widow, a right to take and use the fruit that should be produced by the three rows of trees; but this is not the language of the commissioners.

They set out the first three rows of trees on the west side of the orchard, *running north and south in the centre, between the third and fourth rows.* The running a line in the centre between the last row of trees set off, and the next, shows very satisfactorily that the intention was to set off *territory, and not simply a right to* take and use the fruit. The commissioners give the eastern line as equi-distant between the third and fourth rows of apple-trees, but it is true, they give no other bounds.

In *Beecher* v. *Parmele et al.*, 9 Vt. 352, it was held in the case of a levy of an execution, that where the lot was in rectangular form, a description of a certain number of acres off the east end, was a sufficient description by metes and bounds, and that it should be intended to be by a line parallel with the lot line. The same principle was adopted in the case of *Rich* v. *Elliot*, 10 Vt. 211. A deed was executed conveying " all' of the first division drawn to the right of a particular individual, except forty-six acres off the west end of said lot;" and it was held to be a legal intendment, that the lot was to be divided by a line parallel with the lot lines. In that case the form of the lot, it was conceded, was rectangular, having its sides towards the cardinal points. In the case before us, the rows of trees run north and south, and the orchard was doubtless rectangular. It has been decided that ejectment lies for an orchard, because it is a word of certain signification, though in the writ it must be demanded and described as territory. 2 Bacon, 419.

In the present case a line being given between two rows of trees, and east of the third row, we think it must be taken to have been the intention of the parties, as derived from the case itself, to set off to the widow, that portion of the orchard, laying west of the line given, being the west side of the orchard. As this is the construc-

tion we give to the proceedings in the probate court, setting out the widow's dower, a similar effect should be given to the division of the reversion in the dower.

It has been said that the case shows that the widow had only taken the fruit in her life time, leaving to Keeler the cultivation of the soil, and that this was giving a practical construction to the language of the commissioners. But this cannot have a very decided influence. There may have been sufficient reasons why she did not choose to attempt a cultivation of the land, and if she left it to be occupied by Keeler, he would become, so far as the land itself is concerned, in the nature of a tenant at sufferance, and the fact is stated in the bill of exceptions that after the decease of the widow in 1849, Keeler took the possession of the premises, and, probably the meaning is, in his own right.

A question was made on the argument as to the possession of the defendants. It appears that after the death of the widow, the defendant Keeler, in 1849, took the possession of the premises and excluded the plaintiffs from the same, and it is to be taken that his possession continued down to the bringing of the suit.

In regard to Mr. Briggs' possession, the case is quite bald as to facts; but it appears that in August, 1851, he took a quit-claim deed from Keeler of the premises and probably left Keeler to continue in his actual possession, and if so, what must be the effect? We think it a sound principle, that if the grantee of an absolute deed leaves the grantor in possession, he becomes a *quasi* tenant of the grantee, and that in such case, the grantee may be well joined in a suit against the grantor. The relation of landlord and tenant may well be said to subsist between them; the grantor being a tenant at sufferance. *Hodges & Spaulding* v. *Gates,* 9 Vt. 178. *Stedman* v. *Gassett,* 18 Vt. 346. *Marvin* v. *Dennison et al.,* 20 Vt. 662. But be this as it may, the plaintiff at all events was entitled to a judgment against Keeler, and the judgment being entire, must be reversed in *toto.*

The judgment of the county court is reversed.