## CONDIT *et al.* v. MAXWELL *et al.*, *Appellants.*

### Division One, January 18, 1898.*

1. **Resulting Trusts:** DEED OF LAND TO ANOTHER: PURCHASE BY THIRD PARTIES. Where the consideration for the purchase of land is paid by one party, but under a collateral agreement it is deeded to another, the grantee holds the title in trust for the benefit of him who paid the consideration. In such case the trust does not arise from fraudulent acts of the grantee, but is implied and results by operation of law, from the fact that the purchase money was paid by the *cestui que trust.* And all persons buying the land from such implied trustee, with knowledge of the existing equities, are bound by the paramount right of the actual owner.

2. **Practice:** PREMATURE ACTION: WAIVER. Plaintiffs purchased, and had land conveyed to defendant under an agreement that he was to have ten years in which to pay them for it, and in the meantime he was to pay rent. Before the ten years expired he sold it, and at the trial, to reinvest the title in plaintiffs, he denied the agreement, and still denies it, yet pleads that the action was prematurely brought. *Held,* that his course amounts to an election to repudiate the contract, and hence the right of action accrued when that election was made.

3. **Resulting Trust:** LACHES. While it is true that one who has furnished the money to buy land which was deeded to another, may be charged with laches if he has negligently slept upon his rights for ten years, and induced others to act upon the confident belief that he had abandoned his claim to the property, yet if the trust is admitted and there has been no adverse holding of the land, lapse of time will be no bar.

4. ——: ——: EFFORTS TO KEEP AGREEMENT. Parties who in good faith try to carry out an ageement giving another ten years to pay for a piece of land, ought not to be charged with laches because they did not before the ten years expired bring suit to divest him of the title which he held under an implied trust for them.

5. ——: INNOCENT PURCHASER: NOTICE. One who testifies that before he received a deed from the trustee under the resulting trust, he had been told that two of the beneficiaries claimed some interest in the land, can not claim to be a purchaser without notice, for such information, if followed up, would have given him knowledge of the trust.

---

*NOTE.—Cause decided November 3, 1897, and judgment modified January 18, 1898.

Condit v. Maxwell.

6. ———: PURCHASE BY QUITCLAIM DEED. The title acquired by a quitclaim deed is subject to the equities of one who paid the real consideration for the land at the time it was deeded to the grantor in the quitclaim.

7. ———: MARSHALING ASSETS. If a person has given a mortgage on two tracts of land, one of which he owns in his own right and the other he holds as trustee under a resulting trust, the tract in which plaintiffs have no equity, in a suit by them to establish the resulting trust in the other, should be first sold for the satisfaction of the mortgage.

8. ———: VALUE OF IMPROVEMENTS: DEDUCTION OF RENTS: LIEN. In a suit to establish a resulting trust and take an accounting between the trustee and *cestui que trust*, the value of the improvements made by the trustee is the value at the time of the trial and not their cost value. From the value of the improvements may be deducted the value of the rents with interest thereon from the date such rents became due, and for the balance the resultant trustee (or his purchaser with notice) will have a lien on the land.

*Appeal from St. Louis County Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

AFFIRMED AND JUDGMENT MODIFIED.

*John D. Johnson* and *Joseph S. Laurie* for appellants.

The agreement between H. Clay Sexton and Thos. Maxwell, under which the land in controversy was conveyed to the latter, did not, according to the pleadings and proofs in the case, create a constructive trust in Maxwell for the benefit of plaintiffs, as found by the trial court. (1) Constructive trust only results from imposition or fraud practiced by the one sought to be charged as the trustee in acquiring title to the trust property, and there was no misrepresentation or other fraud practiced by Thomas Maxwell in procuring the conveyance to himself, or in procuring the making of the agreement with H. Clay Sexton respecting the same. Perry on Trusts, sec. 166, *et seq.* (2) Said conveyance and agreement did not create a construct-

ive trust in favor of H. Clay Sexton and his heirs, even if it did in favor of Margaret Condit and R. E. Lee Sexton; for, according to the averments of the petition and evidence, H. Clay Sexton was a party to the fraud, if there was fraud, out of which the trust arose. *Obear v. Howard,* 11 Mo. 425; *Sell v. West,* 125 Mo. 621; 1 Perry on Trusts [4 Ed.], sec. 165. (3) If, however, said conveyance and agreement was in fraud of the rights of plaintiffs, then they can not maintain this action, because they and the said H. Clay Sexton waived the fraud and failed to rescind the agreement as soon as the fraud became known to them. *Taylor v. Short,* 107 Mo. 384; *Bobb v. Wood,* 50 Mo. 95; *Melton v. Smith,* 65 Mo. 315; *State ex rel. v. Jones,* 53 Mo. App. 207; 2 Pomeroy, Eq. Jur., sec. 897; Fry on Spec. Perf. [2 Ed.], secs. 703, 704; Lawson on Contracts, sec. 249. (4) The trust, if any, created by said agreement, was an express trust and therefore not enforcible by reason of not having been in writing. *Rogers v. Ramey,* 137 Mo. 598; *Price v. Kane,* 112 Mo. 419; *Weiss v. Heitkamp,* 127 Mo. 23; *Green v. Cates,* 73 Mo. 115. (5) The transfer of the said land made by Thomas Maxwell did not authorize the judgment of forfeiture, for there was no limitation in the agreement of his right or power to dispose of the property before the ten years expired. The conveyances made by him should be considered as an election on his part to take and pay for the same, as contemplated by the agreement, and not as an assertion of title adverse to plaintiffs. (6) All of said beneficiaries were guilty of such delay and laches in commencing proceedings to redeem the property as to estop them from setting up the trust now. *Tatum v. Holliday,* 59 Mo. 422; *Stevenson v. Saline County,* 65 Mo. 425; *Klein v. Vogel,* 90 Mo. 239; *Burgess v. Railroad,* 99 Mo. 508; *Ferguson v. Soden,* 111 Mo. 215; *Schradski v. Albright,* 93 Mo. 48;

*Laudrum v. Bank*, 63 Mo. 48.   (7)  If it be held that the plaintiffs are not estopped by reason of their laches, then appellant is entitled to be reimbursed out of the said property for the $21,661.78, amount of Thomas Maxwell's indebtedness to him, and which was the consideration paid by appellant for the conveyance of the property to him.   *Eoff v. Ironie*, 108 Mo. 378, and cases cited.

*W. C. & J. C. Jones* for respondents.

(1)  A resulting trust is clearly established in Thomas Maxwell and in his grantee, Joseph Maxwell. *Peacock v. Nelson*, 50 Mo. 256; *Key v. Jennings*, 66 Mo. 356; *Shaw v. Shaw*, 86 Mo. 598; *Johnson v. Quarles*, 46 Mo. 426; *Baumgartner v. Guessfield*, 38 Mo. 41; *Hall v. Hall*, 107 Mo. 109; *Dailey v. Dailey*, 285 S. W. Rep. 330; *Wilson v. Orr*, 27 S. W. Rep. 394; *Kelley v. Johnson*, 28 Mo. 249; *Forrester v. Moore*, 77 Mo. 651.   (2) Joseph Maxwell's title was acquired by quitclaim deed; therefore he takes the property subject to all outstanding equities, and the plaintiffs' rights are superior to his.   *Eoff v. Irvine*, 108 Mo. 385; *Flynn v. Herye*, 4 Mo. App. 366; *Fox v. Hall*, 74 Mo. 316; *Hope v. Blair*, 105 Mo. 95; *Stofel v. Shroeder*, 62 Mo. 150; *Mann v. Best*, 62 Mo. 498; *Ridgeway v. Halliday*, 59 Mo. 455; *Shradski v. Albright*, 93 Mo. 48.   (3)  Joseph Maxwell gave no valuable consideration for his first quitclaim deed from Thomas Maxwell.  He took it as security for an old, outstanding and existing indebtedness due to him by Thomas Maxwell.  He took it, not in payment of the debt, nor did he agree to extend the time of payment.  An antecedent debt is not a valuable consideration.   *Martin v. Jones*, 22 Mo. 25; *Broadwell v. Merritt*, 87 Mo. 101; *Mason v. Black*, 87 Mo. 329; *Harkless v. Barton Co.*, 85 Mo. 619; *Morrison v. Har-*

*rington*, 25 S. W. Rep. 568; *Hope v. Blair*, 105 Mo. 95.
(4) Joseph Maxwell had actual notice of the plaintiffs'
claims prior to the time of acquiring any title to this
property. Actual notice charges him with the equities
that actually existed, irrespective of the question of "no
valuable consideration" and irrespective of the effect of
acquiring title by "quitclaim deed." *Darling v. Potts*,
24 S. W. Rep. 464; *Goodman v. Simonds*, 19 Mo. 106;
*Aubuchon v. Bender*, 44 Mo. 564; *Martin v. Jones*, 22
Mo. 25; *Sergeant v. Ingersoll*, 7 Pa. St. 340. (5) *First*.
The plaintiffs were not called upon to assert their claim
to the property to Joseph Maxwell until he acquired
some title to the property. *Second*. Laches is a de-
fense available only to an innocent holder without no-
tice of equities. *Third*. Plaintiffs were not called upon
to assert their claims sooner because, under the verbal
contract, Thomas was to have the farm for ten years.
*Napton v. Leaton*, 71 Mo. 369; *Smith v. Hutchinson*, 61
Mo. 83; *Kelly v. Hurt*, 61 Mo. 466; *Butler v. Lawson*,
72 Mo. 249; *Spurlock v. Sproule*, 72 Mo. 249; *Bradshaw
v. Yates*, 67 Mo. 510; *Henroid v. Neusbanner*, 69 Mo.
102; *Goodwin v. Goodwin*, 69 Mo. 621; *Burdett v. May*,
100 Mo. 18. (6) Thomas Maxwell was guilty of fraud
in law and in fact. Joseph Maxwell claims through
Thomas Maxwell and can not apply the doctrine of
laches in view of his knowledge of the method by which
Thomas Maxwell acquired title. *Ames v. Gilmore*, 59
Mo. 543; *Shaw v. Shaw*, 86 Mo. 598; *Baumgartner v.
Guessfield*, 38 Mo. 41; *Cadwallader v. West*, 48 Mo.
494; Perry on Trustees, sec. 211, 217; *Conn. Mut. v.
Smith*, 117 Mo. 261.

MACFARLANE, J.—The suit is in equity to set aside
certain deeds conveying a tract of about fifty-three
acres of land situate in St. Louis county. The plead-
ings are quite lengthy, and a statement of the facts

upon which they are predicated will only be necessary in order to make the issues understood.

Prior to March, 1884, H. Clay Sexton owned the undivided half of a tract of land in Clinton county, Illinois, and plaintiff Margaret Sexton (who afterward married Condit) and R. E. Lee Sexton owned each the undivided one fourth of the same, as heirs of John Sexton, deceased. Defendant Thomas Maxwell was the son-in-law of the said H. Clay Sexton. At the same time one Carrie Hewitt owned the tract of land in question, the title thereof being in her trustee B. F. Webster. On the sixth day of March, 1884, H. Clay Sexton, Margaret Sexton and Robert E. Lee Sexton conveyed the Illinois land to Webster as trustee for the said Carrie Hewitt. The said Robert was at that time a minor, about twenty years of age. On the fourth of March, 1884, Carrie S. Hewitt and her trustee conveyed the St. Louis county land to Thomas Maxwell. This deed was dated January 29, but was not acknowledged until March 4, 1884. The expressed consideration was $12,000 and the grantee assumed the payment of a mortgage on the land amounting to $2,500. That the conveyance of the Illinois land was the consideration for this conveyance, is undisputed. H. Clay Sexton was the uncle of the said Margaret and Robert, with whom they lived at the date of these transactions. Thomas Maxwell paid the $2,500 mortgage on the St. Louis land January 3, 1885. In January, 1887, Thomas Maxwell purchased about forty-seven acres adjoining the land he acquired from the Hewitts, and on March 3, 1892, he mortgaged both tracts to defendant, the Connecticut Mutual Life Insurance Company, to secure an indebtedness of $15,000. It is conceded that said company had no notice, at the time of taking this mortgage, of any equities claimed by plaintiffs in the Hewitt land. In May, 1893, Thomas Maxwell executed and

delivered to a trustee a deed of trust to secure to defendant Thomas T. Ruby an indebtedness of $3,000 then due, and advances that might thereafter be made.

On the fourteenth day of June, 1893, Thomas Maxwell, by quitclaim deed, for an expressed consideration of $1, conveyed both tracts of land to his brother, the defendant Joseph A. Maxwell. The wife of the grantor did not join in this deed. On March 6, 1894, Thomas Maxwell, his wife joining, by another quitclaim deed, for a like consideration, conveyed both tracts to the said Joseph A. Maxwell. On February 5, 1894, the land was sold under execution on a judgment against Thomas Maxwell, and Charles C. Garrett was the purchaser to whom the sheriff made a deed. Garrett conveyed to Ruby and Ruby to Joseph Maxwell. Garrett, Ruby and Maxwell, all had notice of plaintiffs' claim, when these purchases and deeds were made. Thomas Maxwell had possession of the land from the date of the conveyance to him by Hewitt and her trustee until his conveyance to his brother, and while in possession made valuable and lasting improvements upon it. H. Clay Sexton died December 21, 1893, and his heirs join in this suit as plaintiffs.

These facts were recited in plaintiffs' petition, and were not controverted at the trial. Plaintiffs charge that the consideration for the conveyance of the Hewitt land to Thomas Maxwell was paid by the exchange of the Illinois land which belonged to H. Clay Sexton and plaintiffs Robert E. Lee Sexton and Mrs. Condit; that the said Thomas Maxwell held the legal title in trust for them, and that his grantees took their deeds with notice of the trust. They ask that the deeds be set aside; that the title be vested in them; that an account be taken of the rents and profits and of the improvements and for general relief. The answer of defend-

ants, while admitting many of the facts charged in
the petition, denied all the allegations which charge
the trust, and denied all notice thereof.    It may there-
fore be treated as a general denial, with the special de-
fense noticed in the opinion.    A trial resulted in an
interlocutory decree in favor of plaintiff, against the
Maxwells, subject to the mortgages mentioned.    Sub-
sequently an account was taken and a final decree was
rendered.    Defendant Joseph A. Maxwell appealed.

In respect to the conveyance by the Hewitts to
Thomas Maxwell of the land in question in 1884, and
the agreement then made by him with H. Clay Sex-
ton, Robert E. Lee Sexton and Margaret Sexton,
who paid the consideration therefor, there is but little
conflict in the evidence.    Mrs. Venie Salter, a daugh-
ter of H. Clay Sexton, testified: "I remember the time
the conveyance was made by H. Clay Sexton and Mar-
garet Sexton and Robert E. Lee Sexton of the land in
Clinton county, Illinois, to Hewitt.    I was my father's
private secretary and attended to a good deal of bus-
iness for him.    I heard my father tell Thomas Max-
well that he could sell the property in Illinois or make
exchange of the property in Illinois for the property in
St. Louis county, and that if he wanted it he would
sell it to him and give him ten years to pay for it in,
and in the meantime he could use it and pay rent for
it at the rate of $20 per month to my father and $10 a
month to each of the children of John Sexton.    He
also told him if at the end of the ten years he did not
want to keep the place he would take it back and allow
him for whatever improvements he had put on the
place, and if he decided to keep the place he was to
pay $10,000 for it.    He told him there was a deed of
trust on the place for $2,500 which he (Maxwell) was
to raise.    My father said he could keep the place for

ten years, and if he made any improvements on it and father took the place back, then he was to allow Mr. Maxwell for the improvements." Two or three other witnesses testified to the same, or substantially the same offer by H. Clay Sexton. The transfer was made and the deed from Hewitt and her trustee to the St. Louis land was accepted by Thomas Maxwell and under it he went into the possession. There was evidence by a number of witnesses that during his occupancy of the land Maxwell paid rent to Mrs. Condit under this agreement. It is true that Maxwell, who was permitted to testify, denied that any such agreement was made, or that he paid rent to Mrs. Condit, yet he does not claim that he paid any consideration for the land except, in a general way, that Clay Sexton was at the time indebted to him and he understood "that Sexton was making him a present of it." "He (Clay Sexton) said he guessed it would make us even."

I.   We have no doubt from the evidence that Maxwell accepted the deed and took possession of the farm under a verbal agreement substantially as that detailed in the evidence of Mrs. Salter, and that the Illinois land, which was at the time owned by Clay Sexton and the two children of John Sexton, deceased, was the sole consideration for the conveyance.

Under these acts of the parties, disregarding the agreement, Thomas Maxwell, the grantee, took the title in trust for the use of H. Clay Sexton and Robert E. Lee and Margaret Sexton, who paid the consideration. The trust in such case does not arise from fraudulent acts of the grantee, but is implied from the fact that the purchase money was paid by the *cestui que trust.* "This rule," it is said, "has its foundation in the natural presumption, in the absence of rebutting circumstances, that he who supplies the purchase money intends the purchase to be for his own benefit,

and not for another, and that the conveyance in the name of another is a matter of convenience and arrangement between the parties for collateral purposes, and this rule is vindicated by the experience of mankind." 1 Perry on Trusts, sec. 126. See *Hall v. Hall*, 107 Mo. 101, and cases cited. The trust resulted, therefore, notwithstanding the conveyance was made to Maxwell under the express direction of H. Clay Sexton.

The conveyance to Maxwell was absolute in its terms and contains no words suggesting an intention to create an express trust. The trust resulting from the acts of the parties could not be converted into an express trust by the verbal cotemporaneous agreement of the parties for the reason that it was not manifested and proved by writing as is required by the statutes of frauds. (R. S. 1889, sec. 5184.) "Oral proof can not be heard to engraft an express trust on a conveyance absolute in its terms." Perry on Trusts, sec. 76. Had the agreement been in writing, then the conveyance and agreement would, taken together, have created an express trust, but a failure to. put the declaration of trust in writing does not prevent a trust from resulting by operation of law from the acts of the parties.

It appears from the record that the court not only found and declared that Maxwell took and held the title in trust, but adjusted the accounts between the parties in accordance with the terms of the agreement. We do not find that any of the defendants made specific objection to this course at the time. No plea of the statute of frauds was interposed nor was objection made to the oral proof of the agreement. The statute of frauds only affects the remedy upon the contract, and the rule is that unless the party to be charged undertakes to avail himself of its protection, the con-

tract will be perfectly good against him.    Browne on
Stat. Frauds, sec. 135.

The court was clearly right in finding and declar-
ing that Thomas Maxwell took and held the property
in trust for those who paid for it, and very properly
adjusted the accounts of the parties according to the
terms of the collateral agreement.

II.    Appellant raises several objections to the
enforcement of this trust, which will now be consided.

*First.*    It is said that the action was premature;
that is, that under the contract Thomas Maxwell
had ten years in which to elect whether he would pay
for the land or return the same to the beneficiaries in
the trust, and the suit was commenced before the expi-
ration of the time agreed upon.    The deed was dated
in January, 1884, but was not acknowledged until
March, 1884.    The suit was commenced in February,
1894.    The date of the agreement was not definitely
shown, though it was made pending the negotiations
for the exchange and must have been at least as early
as January, 1884.    Under these facts there would be a
question whether the suit was not premature.    But it
very clearly appears from the evidence that Thomas
Maxwell not only refused to carry out the contract,
but denied the trust altogether some time before the
suit was commenced.    Indeed, he denied the trust by
his pleadings throughout the trial, and appellant still
denies it on this appeal.    We must assume that
Thomas and appellant, his grantee, elected to repudiate
the contract, deny the trust and claim title to the land.
A right of action accrued to plaintiffs when these elec-
tions were made.

*Second.*    It is next insisted that plaintiffs were
guilty of such laches in commencing this proceeding as
to estop them to set up the trust.    The objection here
made seems to be inconsistent with the one last con-

sidered.   But the point is that if this is to be regarded
as a resulting trust, then the verbal agreement did not
convert it into an express trust, nor was proof of the
terms of the agreement admissible for the purpose of
establishing the purposes of the trust.   If the deed in
question and the payment of the purchase money
created the trust, then it is  said plaintiffs' right of
action accrued immediately and a delay for ten years
ought in equity to bar the action.

The rule is well settled in equity that "the activ-
ity of equity powers can not be invoked where a party
has negligently slept upon his rights, and induced oth-
ers to act upon the confident belief that he has aban-
doned them." *Schradski v. Albright*, 93 Mo. 48.   In
the same case it is also said:   "There is no fixed rule
by which to determine when laches will constitute a
defense, but each case, when it arises, must be deter-
mined according to its own particular circumstances."
There is no doubt that this defense may be interposed
to an action to enforce a resulting trust, especially when
it appears, as in this case, that the nominal purchaser
has been in the possession and enjoyment of the estate.
"But if the trust is admitted, and there has been no
adverse holding, lapse of time is no bar."  Perry on
Trusts, sec. 141.   It appears in this case that the deed
was made to Maxwell by direction of Clay Sexton.
Maxwell, without paying any consideration, accepted
the deed and went into possession under it.   He knew
the purposes for which the deed was made and accepted
the trusts.   He occupied the land, paying rents to some
of the *cestuis que trust* for several years.   In these cir-
cumstances Thomas Maxwell certainly could not defeat
the action on account of delay in commencing it.   Put-
ting the agreement out of sight, the beneficiaries of the
trust had the right to call upon the trustee, at any time,
to execute the trust by a conveyance to them, but proof

of the argeement is competent to explain the delay. The parties had the right to carry out the agreement, whatever their legal obligations to do so may have been, and ought not to be charged with *laches* while their intentions were good and the time agreed upon had not expired.

*Third.* The evidence shows that Thomas Maxwell and his brother Joseph had been partners from 1874 to 1885, dealing in horses and mules. After that Thomas continued in the same business alone, and Joseph engaged in partnership with one Crouch under the name of Maxwell & Crouch. In 1888 the firm commenced extending credit to Thomas and in June, 1892, his indebtedness amounted to between $21,000 and $22,000. The arrangement between Joseph and his firm was, that he would stand good for the account of his brother. Joseph testified that Thomas always said "that he would pay him when he sold the farm." As has been stated, on the fourteenth of June, 1893, Thomas Maxwell, by quitclaim deed, for an express consideration of $1, conveyed both tracts of land to his brother Joseph. The parties both testify that the real consideration was the indebtedness due from Thomas to him. Joseph testified that before he received this deed he was told that Lee and Margaret Sexton claimed some interest in the farm.

One who in good faith, for a valuable consideration, and without notice, purchases from the trustee in such a resulting trust, takes a good title as against the *cestui que trust.* But Joseph Sexton was not such a purchaser. The information he received of the claim that two of the beneficiaries set up was sufficient to have put him on an inquiry which, if followed up, would eventually have given him knowledge of the trust. Besides, he purchased by quitclaim deed, and the title he thereby acquired was subject to the equities of plaintiffs.

*Eoff v. Irvine*, 108 Mo. 385; *Hope v. Blair*, 105 Mo. 90.

*Fourth.* It is insisted that the quitclaim deed from Thomas to Joseph Maxwell was intended as a mortgage on the land to secure the money the latter had advanced to the former, and operated as such, and that all the beneficiaries under the trust should be estopped by their conduct and laches to set up their equities to defeat the lien for all of such advancements as were made in good faith without notice of such equities. The trust deed, on its face, conveyed to Thomas Maxwell the absolute title to the land. The grantee was put in possession of the land, paid incumbrances against it, made expensive improvements upon it, and occupied it without objection or hindrance from 1884 to 1893. All these acts, said defendant testified, were done and permitted with his knowledge and without notice to him of the equities plaintiffs now claim. These facts standing alone would appeal with much force to our sense of justice. But they do not stand alone.

The evidence shows that appellant acquired notice of plaintiffs' rights about the time that plaintiffs learned that Thomas denied the trust, so there could have been no delay in commencing the suit by which appellant could have been prejudiced.

The relation of all these parties to each other was such that an inference could fairly be drawn that Joseph had knowledge of the trust from its creation. At the time the exchange of the land was made Thomas was the son-in-law of Clay Sexton and partner of his brother Joseph. The families were intimate. Joseph knew that the Illinois land was exchanged for the land in question, and must have known that Thomas paid nothing at the time the exchange was made. It is difficult to believe that Joseph was not fully advised of the verbal arrangement between his brother and the Sextons

in reliance upon which the trust was created. However that may be, it was shown at the trial that the land was worth $40,000, and under the agreement it is perfectly clear that Thomas had the right to a conveyance, upon payment of $10,000 and the rent reserved. A margin of about $25,000 was thus left upon which plaintiffs may have supposed that Joseph looked for credit if they in fact encouraged him in extending the credit. After Joseph received notice of plaintiff's equities, as admitted by him, he undertook to aid the trustee to defeat them by taking a deed from the trustee instead of carrying out the trust by which he could easily have secured himself. He ought to have no advantage from his own wrong. Moreover, it does not appear that plaintiffs or Clay Sexton had any knowledge or notice that Joseph was giving credit to his brother on the strength of his ownership of this land or otherwise. They neither did anything or suffered anything which could estop them in equity.

*Fifth.* By the decree as rendered plaintiffs' rights were made subject to the deeds of trust of the insurance company and Ruby. These deeds, as has been stated, covered both tracts of land. The decree required the tract to which plaintiffs have no equity to be primarily liable and first sold for the satisfaction of these deeds of trust. The decree in this respect is in accordance with the analogous equitable rule for marshaling securities. Thomas Maxwell owes the debts secured by the deeds of trust, and Joseph Maxwell being a purchaser of the property with notice of plaintiffs' equity, stands in his shoes. It is equitable that these creditors should exhaust the property to which Maxwell has title before resorting to that in which plaintiffs have an equitable interest.

We find no error in the ruling of the court in taking the account. The court allowed appellant the

value of the improvements made by Thomas Maxwell upon the land, but estimated their value at the time the account was taken. Appellant insists that he could have been allowed the cost of making the improvements.

We are of the opinion that the court took the equitable view of the matter and ruled correctly. Appellant and his brother had the use of the improvements up to the time of taking the account, and in fairness they ought to stand the deterioration caused by the use.

The judgment is affirmed. All the judges of this division concur.

PER CURIAM (*On motion of respondents*).—By the decree of the circuit court, appellant Joseph Maxwell was given judgment and a lien upon the land for the value of the improvements put upon it by his grantor, Thomas Maxwell. The court also found the rental value of the premises to be $40 per month.

No order to adjust the equitable rights of the parties as they now exist having been made, the judgment of affirmance is hereby modified and plaintiffs are allowed until March 15, 1898, in which to pay the aforesaid lien, and until after that date execution for the enforcement thereof is stayed.

It is further ordered that the judgment for improvements have interest from its date at six per cent per annum and that the amount found to be due plaintiffs for the use and occupancy of the premises also have interest at the same rate from the date of the judgment. It is further ordered that $40 per month, with interest at six per cent from the time each instalment becomes due, be allowed plaintiffs as rents and profits from the date of the judgment, the amount thereof

to be deducted from the amount of said judgment for improvements and interest. In all other respects the judgment of the circuit court is affirmed. All the judges concur.

PER CURIAM (*On motion of appellants*).—On motion of appellant it is shown to the court that in taking the account for improvements made upon the land and for rents and profits thereof, the balance found. due appellant for improvements, after deducting the rents and profits to date of the judgment, amounted· to $8,790. It appears from the record that in the addition of the items found a mistake was made by the court against appellant of $700, and the true amount of the judgment in favor of appellant should have been $9,470, instead of $8,700, as rendered.

In order to correct the mistake, which appears on the face of the record, the judgment of affirmance is further modified, and it is ordered and adjudged that the judgment and lien of appellant Joseph Maxwell for improvements be corrected so that he may have a lien on said land for the sum of $9,470 and interest thereon from the date of the judgment at six per cent per annum, and if the same be not paid on or before March 15, 1898, the same may be enforced by execution and sale of the land.

And it appearing further that the amount due appellants was found by deducting the amount of the rents and profits up to the date of the judgment, it is further ordered that the following part of the judgment as heretofore modified be stricken out and be of no force, to wit: "And that the amount found to be due plaintiffs for use and occupancy of the premises also bear interest at the same rate from the date of the judgment."

In all respects, except as herein and heretofore modified, the judgment of the circuit court is affirmed. All concur.