Merrimack, }
Oct. 6, 1903. }

## CROWLEY *v.* CROWLEY.

A plaintiff who seeks to establish an equitable ownership in realty, by an action against the residuary legatee of the person in whom the legal title is vested, is not excluded as a witness in his own behalf, under section 16, chapter 224, Public Statutes.

Where a deed of real estate is taken in the name of a person *sui juris*, for the purpose of overcoming disabilities arising from the purchaser's minority, a trust results by implication of law in favor of the party by whom the funds were furnished.

A minor allowed to control his earnings with the paternal consent is entitled to real estate purchased therewith for his own benefit and standing in the name of the father, as against the latter's devisee.

Where a deed of real estate is taken in the name of one person and a part of the purchase money is paid by another, a trust results in the latter's favor *pro tanto;* and if a note for the balance of the price, signed by the party in whom the legal title is vested, is subsequently paid by the *cestui que trust,* in pursuance of his agreement at the date of the obligation, a trust also results in his favor in the fractional part of the estate thus paid for.

Where a trust results by implication of law from the payment of the consideration for property conveyed to another, the statute of limitations begins to run in favor of the holder of the legal title against the equitable owner at the date of the conveyance, if there is no recognition of the rights of the latter; and if his rights are recognized, then at the time when the holder of the title disavows the trust, or asserts some right to the property inconsistent with it, and the *cestui que trust* has knowledge of such action, or from the circumstances ought to have learned of it.

BILL IN EQUITY, to establish the plaintiff's title to a certain farm, by means of a resulting trust. Facts found, and case transferred from the October term, 1901, of the superior court, by *Stone,* J.

The farm was conveyed to John Crowley, the father of the plaintiff, November 26, 1864, by one Goss. The plaintiff was then between sixteen and seventeen years old, and had not been emancipated. He lived with his parents, but had worked out for some time and taken his wages to his mother, who saved $300 of them. He wished to buy a farm, and the subject of buying this particular farm was discussed by him and his parents; and his mother told him of the saving from his wages. He saw Goss about making the purchase, but the latter declined to deed the farm to him because of his minority, and suggested that he would make the

deed to the plaintiff's father. Accordingly the mother gave the plaintiff the $300, he paid it to Goss toward the purchase money, and Goss deeded the farm to the father, who gave Goss his note for the balance ($550) of the purchase money and a mortgage of the farm to secure the payment of the note. The plaintiff subsequently paid the note. The farm was purchased by the plaintiff, to make a home for his parents during their lives; and they lived upon it until their deaths,—the mother dying in 1875, and the father in 1901,—excepting that the father lived with the plaintiff elsewhere during the year following the mother's death.

The father married the defendant in 1876, and she subsequently lived with him upon the farm until his death. During a larger part of this time he paid the taxes on the farm, and always claimed to the defendant and sometimes to others that he was the absolute owner of it. He never made such a claim to the plaintiff until 1900, when, upon the plaintiff's asking him for a quitclaim deed, he refused to give it, and said the farm was his. Once prior to the mother's death, and again in 1876, he acknowledged to the plaintiff that the farm belonged to him, but there was no evidence that these acknowledgments were made in answer to a claim of title by the plaintiff; neither was there any evidence that the plaintiff or John made any claim to the property or exercised any ownership over it, other than what appears from the facts stated herein. The defendant did not know of the plaintiff's claim until after the death of John. She expended money in shingling and clapboarding the house upon the farm, putting in doorsills, etc. She would have married John if she had known that he did not own the farm. John left a will by which the defendant was made residuary legatee of his estate, and as such she asserts title to the farm. She is also executrix of the will.

The facts relating to the purchase of the farm, the giving of the note and mortgage, the payment of the note, and the acknowledgments by John of the plaintiff's ownership, were proved by the testimony of the plaintiff. The defendant excepted to the acceptance of the plaintiff as a witness.

The defendant pleaded the statute of limitations, and evidence was considered on the issue thus made. The court found that the foregoing facts constituted in law a resulting trust, and ordered a decree in favor of the plaintiff. If the facts do not constitute a resulting trust, the defendant is entitled to judgment.

*Eastman & Hollis*, for the plaintiff.

*Cornelius E. Clifford* and *David F. Dudley*, for the defendant.

CHASE, J. The plaintiff says he is the equitable owner of the farm in question, and that the defendant, as residuary legatee under the will of John Crowley, holds the legal title. The defendant denies that the plaintiff has any title, and says that John was the absolute owner of the farm, and she is now owner by reason of being such residuary legatee. The issue is between the two parties as individuals. The estate of John has no interest in it whatever. The defendant's position in the suit is no more representative of the estate than it would be if her title depended upon a quitclaim deed from John to her. Such being the facts, the provision of the statute (P. S., c. 224, s. 16), by which the surviving party to a cause is not allowed to testify as to facts occurring in the lifetime of the deceased, unless his executor or administrator elects to testify, does not apply; and there was no error in the ruling by which the plaintiff was accepted as a witness. P. S., c. 224, s. 13.

A trust in the farm in favor of the plaintiff would result by implication of law if it was purchased with the plaintiff's money and the title was taken in John's name, not to effect a gift, but to overcome disabilities arising from the plaintiff's minority,—both the plaintiff and John understanding that the farm was to be the property of the plaintiff. *Page* v. *Page*, 8 N. H. 187; *Hopkinson* v. *Dumas*, 42 N. H. 296; *Pearl* v. *Whitehouse*, 52 N. H. 254; *Hall* v. *Congdon*, 56 N. H. 279; *Ferrin* v. *Errol*, 59 N. H. 234. While these facts might perhaps be reasonably inferred from those reported, they are not specifically found. It is not the province of this court to determine a question of fact, however strong or conclusive upon the one side or the other the evidence recited in the case may seem to be, and though all the evidence is reported. *Jones* v. *Aqueduct*, 62 N. H. 488; *Metcalf* v. *Weed*, 66 N. H. 176; *Martin* v. *Livingston*, 68 N. H. 562; *Friel* v. *Plumer*, 69 N. H. 498; *Champollion* v. *Corbin*, 71 N. H. 78. The reserved case in *Jones* v. *Aqueduct* expressly stated that it contained a statement of "all the facts and circumstances claimed by either party to have any bearing upon the question whether the use made by the defendants of their land and of the water is or is not a reasonable use" (66 N. H. 178); and yet the court held that the question of reasonable use was a question of fact and must be determined at the trial term. It is doubtful if the report in the present case is as comprehensive of the testimony and circumstances bearing upon the question of a resulting trust as was that before the court in *Jones* v. *Aqueduct* bearing upon the question there considered; but assuming that it is, the findings as to the facts necessary to constitute such a trust should be made at the trial term.

The defendant says that upon the facts disclosed in the report

the $300 paid by the plaintiff toward the farm at the time of the purchase was John's money as a matter of law, because derived from the plaintiff's labor while he was a minor and receiving support from his father. Although John would be entitled to the plaintiff's earnings while a minor, in the absence of any agreement or understanding to the contrary, he was at liberty to allow the plaintiff to have his earnings for his own benefit. John's consent that the plaintiff's earnings should belong to him would bind John, and give the plaintiff a good title to them as against John's devisee. *Johnson* v. *Silsbee*, 49 N. H. 543. Whether John gave such consent is a question of fact. If he did, the $300 belonged to the plaintiff, and his case to that extent is proved. Without this fact, he is not entitled to the relief sought.

The further point is made by the defendant that a trust did not result in favor of the plaintiff because he did not pay the entire consideration for the farm at the time of the purchase; that his payment of John's note subsequently would not operate to raise the trust. If the plaintiff paid $300 of his own money toward the farm at the time of the purchase, understanding that he was not giving the money to his father, a trust would result in his favor *pro tanto*, even if the balance of the purchase money was so paid as not to raise a resulting trust on its account; that is to say, John would hold the title to six undivided seventeenths of the farm in trust for the plaintiff. *Pembroke* v. *Allenstown*, 21 N. H. 107; *Tebbetts* v. *Tilton*, 31 N. H. 273; *Hall* v. *Young*, 37 N. H. 134. Unless there was an agreement between the plaintiff and his father, at the time the note and mortgage were given by the latter, that the plaintiff should pay the note, the payment of it subsequently by him would not raise a resulting trust in his favor in the fractional part of the farm thus paid for. *Francestown* v. *Deering*, 41 N. H. 438; *Johnson* v. *Silsbee*, 49 N. H. 543, 547; *Bodwell* v. *Nutter*, 63 N. H. 446; *Fessenden* v. *Taft*, 65 N. H. 39. But if the plaintiff induced his father to give the note to enable him to make the purchase, and promised to pay it, it will be effective in raising the implication of a trust. The material fact is the payment of the consideration by the *cestui que trust* at the time of the purchase. It matters not how it is paid, whether by money on hand, or borrowed, or by the promise or obligation of the *cestui que trust* himself, or of some other person procured by him for the purpose. The principle is well illustrated by the cases of *Pearl* v. *Whitehouse*, 52 N. H. 254, and *Ferrin* v. *Errol*, 59 N. H. 234, in which the alleged trustees advanced the whole or a portion of the purchase money at the request of the alleged *cestuis que trustent*, with the understanding that the former should hold the title of the land until the advances were repaid. If the plaintiff had

avoided paying the note by availing himself of his infancy, or of the statute of frauds, the foundation for a resulting trust would fail; but as he has paid the note, the infirmity in the original agreement, if it be found that he made one, would become immaterial. By the agreement and its execution, he in effect would pay the purchase money for the land at the time of the conveyance.

Another point made by the defendant is, that if there was a trust it was an express trust, and being created by parol, is void by virtue of the statute of frauds. The fact relied on to constitute an express trust is that the purchase was made by the plaintiff to make a home for his parents during their lives. So far as appears, this was merely the reason why the plaintiff made the purchase. He did not attempt to make a contract by which his parents were to have a life estate in the farm. Their occupancy of it was to be by his license, and was terminable at his will. They were to have no rights in it, and no trust in respect to it in their favor was contemplated by the plaintiff or them. If it be so, this position of the defendant is not tenable.

The defendant further says that if there was originally a resulting trust, the plaintiff is now barred from any remedy to enforce it by the statute of limitations or laches. The statute does not ordinarily run against an express trust until there is an open disavowal of the trust, or some other breach of faith which may give rise to an action. It runs against a constructive trust arising from the commission of fraud as soon as the fraud is committed, unless the fraud is concealed from the beneficiary, in which case it will not begin to run until he has actual or constructive notice of the fraud. The reason seems to be that the fraud from which the trust originates is "as complete and absolute a denial of the rights of the injured party as it is possible to have; and every day which passes without reparation of the injury is a continuation or repetition of it." *Howell* v. *Howell*, 15 Wis. 55; *Broder* v. *Conklin*, 121 Cal. 282, 288. "Where a trust results by implication of law from the payment of the consideration for property conveyed to another, the statute begins to run in favor of the holder of the legal title against the equitable owner at the time of the conveyance, if there is no recognition of the rights of the *cestue que trust*; and if his rights are recognized, then at the time when the holder of the title begins to hold adversely." *Currier* v. *Studley*, 159 Mass. 17, 20; *Dow* v. *Jewell*, 18 N. H. 340; *Springer* v. *Springer*, 114 Ill. 550; *Reynolds* v. *Sumner*, 126 Ill. 58; *Condit* v. *Maxwell*, 142 Mo. 266; Per. Tr., *ss.* 141, 865; Sto. Eq. Jur., *s.* 1520. In such cases the title to the property is generally taken in the name of the trustee, with his knowledge

and approval and upon his recognition of the relation thereby created. It is hardly conceivable that a trustee should fail to recognize the trust at the time of the conveyance, unless he intends to deceive the beneficiary and acquire an absolute title by fraud. In that event, there would be a practical disavowal of the trust at the outset, and the statute would begin to run as in the case of a constructive trust. But so long as the trustee recognizes the trust, the beneficiary may rely upon the recognition, and ordinarily will not be in fault for omitting to bring an action to enforce his rights. The case then resembles an express trust of a continuing nature, and is subject to the statute of limitations in like manner. If the trustee is in possession by permission of the *cestui que trust*, the possession will be that of the latter. *Kane* v. *Bloodgood*, 7 Johns. Ch. 90, 121. It will not become adverse to the *cestui que trust* until the trustee disavows the trust, or asserts some right to the property inconsistent with it, and the *cestui que trust* has knowledge of the disavowal or assertion, or from the circumstances ought to have learned of it. *Newmarket* v. *Smart*, 45 N. H. 87; *Hall* v. *Stevens*, 9 Met. 418; *Rung* v. *Shoneberger*, 2 Watts 23; *Fawcett* v. *Fawcett*, 85 Wis. 332; *Springer* v. *Young*, 14 Or. 280. If there was a resulting trust in this case, the questions whether John recognized the plaintiff's rights at the outset,—if so, whether he subsequently changed his position and disavowed the trust,—if so, when the change was made,—and whether the plaintiff knew of it or under the circumstances ought to have learned of it,—are all questions of fact that cannot be determined in this court. It is sufficient to say that the facts reported do not conclusively show that the plaintiff's remedy would be barred, if he originally had one.

According to the provisions of the case, the defendant should have judgment. But justice seems to require that the plaintiff should have a further hearing if he desires it; and to afford him an opportunity to apply for such hearing, the order made here is,

*Case discharged.*

All concurred.