Pamela Jane HERGENRETER et al., Respondents,

v.

Lillian M. SOMMERS et al., Appellants.

No. KCD 27300.

Missouri Court of Appeals, Kansas City District.

March 29, 1976.

Sommers & Holloran, Inc., Don B. Sommers, St. Louis, for appellants.

William K. Waugh, Jr., John C. Monica, Stephen D. Aliber, Kansas City, for respondents; Shook, Hardy & Bacon, Kansas City, of counsel.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal from judgment which determined that respondents are the equitable owners of real estate and enjoined sale of the property in execution of a judgment against respondents' parents and others. The question is whether respondents are entitled to the benefit of a resulting trust for the full value of the property as found by the trial court. Affirmed.

Pamela Jane Hergenreter, Gail Lynn (Hergenreter) Nieman, Vickie Ann (Hergenreter) Alvord, and Susan J. (Hergenreter) Moke are the daughters of Victor and Beulah A. Hergenreter. Lillian Sommers is a judgment creditor of Victor Hergenreter, Beulah Hergenreter, John W. Newhart, Ruth L. Newhart, and C. D. Newhart; H. C. Myers, Sheriff of Buchanan County, attempted the enjoined execution on the judgment against the real estate in question.

On July 10, 1968, James W. and Dorothea V. Wilson conveyed the real estate in question to Victor and Beulah A. Hergenreter, husband and wife. On February 19, 1972, Victor and Beulah A. Hergenreter conveyed the property to their daughter Susan J. Moke.

On August 28, 1969, Lillian M. and Samuel L. Sommers instituted suit on a promissory note executed by Victor Hergenreter, Beulah Hergenreter, John W. Newhart, Ruth L. Newhart, and C. D. Newhart. On January 14, 1971, Mrs. Sommers (Mr. Sommers having died) obtained judgment on the note. On August 22, 1973, Mrs. Sommers caused execution on the judgment to issue; and on August 24, 1973, the sheriff levied execution on the property in question, standing in the name of Susan Moke. Notice was given that all right, title, interest, claim, and estate of Victor and Beulah A. Hergenreter in the property would be sold to satisfy the execution. Respondents were not parties to the suit on the note in which Mrs. Sommers obtained her judgment, and brought this action to enjoin the execution sale.

Respondents alleged: Although the deed from James W. and Dorothea V. Wilson to Victor and Beulah A. Hergenreter recited a consideration of $10 paid by Victor and Beulah A. Hergenreter, the consideration was paid by respondents who, at the time, were minors, in that they furnished their parents $2,250 "with the request, direction, express agreement and understanding" that their parents purchase the land in question for them by paying $2,250 to the grantors "as a cash down payment and executing a Deed of Trust for the balance of the purchase price." Victor and Beulah A. Hergenreter, on July 10, 1968, completed the purchase of the property as trustees for the children as agreed, using the $2,250 furnished them for the down payment and executing a deed of trust for the balance. Since the purchase, respondents have made all payments of principal and interest, have been the sole owners and recipients of all income derived from the property, and have paid all expenses incurred in operation and maintenance of the property. The deed of February 19, 1972, from Victor and Beulah A. Hergenreter to Susan J. Moke conveyed the property to her "to hold for herself and her sisters." Victor and Beulah A. Hergenreter do not now own, nor have they ever owned, any right, title, interest, or estate in the property in that it was at all times charged with a trust in favor of their children "in whom the beneficial interest lies."

The foregoing allegations are sufficient to state a cause of action for a resulting trust in that consideration for the prop-

erty is said to have been paid by persons other than those in whose name the title was taken. *Mays v. Jackson,* 346 Mo. 1224, 145 S.W.2d 392, 394[3] (1940); *Scott v. Ferguson,* 235 Mo. 576, 139 S.W. 102 (1911); *Laughlin v. Laughlin,* 291 Mo. 472, 237 S.W. 1024 (banc 1921). Appellant Sommers denied such allegations and the cause went to trial on the issues thus presented.

Victor Hergenreter identified the general warranty deed from James W. and Dorothea V. Wilson, dated July 10, 1968, and the deed of trust on the property of the same date, executed by him and his wife to Peoples Home & Savings Association to secure their note for $13,650, payable in monthly installments of $235 beginning August 10, 1968. He and his wife and their four daughters previously had discussed such a transaction. The children had some money and some deposits in some savings accounts and it was decided that the children should take their monies and buy some real estate. The deed of July 10, 1968, was taken and the deed of trust was given on behalf of the children pursuant to this idea. When the transaction was first contracted, Mr. Hergenreter made an earnest money payment of $500. The total down payment when the deed was taken was $2,250. "I paid five hundred dollars down, and I paid five hundred dollars later, out of my funds, because the children could not get their accounts closed. * * * and they raised the rest of the money and made the down payment, and later they paid back the thousand dollars. * * * we didn't want to draw money out and lose some interest. It was delayed for several weeks so that they could draw their money, and at that time I made the down payment * * * I had an understanding and they knew * * *."

The children repaid their father by checks for $800 and $200; the remaining $1,250 came from their savings accounts and a check they had for labor performed. Three checks were in evidence, drawn on the account of "Hergenreter partnership By Susan Hergenreter and/or Vickie Hergenreter." One dated June 10, 1968, to James W. and Dorothea V. Wilson for $1,250 and

one dated July 25, 1968, to Victor Hergenreter for $800 were signed "Hergenreter Partnership by Susan Hergenreter"; the third dated November 4, 1968, to Victor Hergenreter for $200 was signed "Hergenreter Partnership by Vickie Hergenreter." Mr. Hergenreter deposited his checks in the First National Bank of St. Joseph. He had never had any interest in the children's partnership bank account which was opened in The American National Bank on June 27, 1968, with a deposit of $2,160.83, consisting of $77.25 in currency and silver for "advance rent collected by the seller which he turned over," and $2,083.58 made up of the following: Four checks drawn June 24, 1968, in payment of notes of the Kansas District of the Lutheran Church, endorsed by Gail Hergenreter for $291.83, Pam Hergenreter for $132.65, Vickie Hergenreter for $446.56, and Susan Hergenreter for $318.36; one check drawn June 20, 1968, in payment of a savings account in the Western District of the Lutheran Church, endorsed by Susan Hergenreter for $476.16, and a payment June 25, 1968, of $418.02 for microfilming work performed by the girls for the probate court. The five checks issued by the Lutheran Church also contained Mr. Hergenreter's name. He had no interest in the checks; they represented savings accounts the children had with the Lutheran Church compensation fund and came from money the children had accumulated over a period of years which they had received on various occasions and for labor performed.

Also on July 10, 1968, Victor and Beulah A. Hergenreter executed a general warranty deed to their four daughters "to fulfill the agreement I had with the children that the property was theirs." The deed was not delivered or recorded "because there were four minor children involved"; it was his way of putting the understanding and arrangement in writing. His purpose was "to show that it was their property. In case anything happened to us, it would be theirs."

The recorded deed of February 18, 1972, from Victor and Beulah A. Hergenreter

was to Susan J. Moke only because "by this time Susan had reached the age of twenty-one; the other three were still minors," and the purpose of the deed was "to get our property matters in order; to get the property transferred to the children."

All rents and profits realized from the property were received by the Hergenreter children who placed them in their partnership account out of which they made regular payments on the deed of trust, paying it in full on schedule, and paid taxes and upkeep on the property. Mr. Hergenreter had made no attempt to treat the property as his own.

Edwin A. Bird was the real estate broker who handled the real estate transaction in question. "The agreement on the contract was that they [buyers] would secure a loan within thirty days. And after about three weeks had gone by, Mr. Hergenreter informed us that the money he was getting for the down payment would be delayed until sometime around July 1. * * * And I went back to the seller, Mr. Wilson. He agreed that if he would pay five hundred dollars more down and hold it and leave it in escrow with me * * * they proceeded to make their loan arrangements at the Peoples Home Savings. Then I was called in to bring in the escrow money the 10th of July on the closing * * * the delay * * * was that the money was coming from the girls' savings accounts, that they were purchasing the property for them. They would be losing some interest so there was some time involved that he needed to arrange this."

Susan J. Moke was present at the closing of the transaction in question to write the $1,250 check for the balance of the $2,250 down payment. She wrote the check on the Hergenreter partnership account which she and her sisters had set up "as soon as we received the funds from our savings accounts. * * * this was to be for the sole purpose of purchasing this apartment house, making the repairs on it, receiving rents on it, and just maintaining this property." She also wrote the $800 check to her father. "The partnership paid him for the

thousand dollars we had borrowed from him to acquire this apartment house. * * * My father acquired it for us; that was always our understanding." Mrs. Moke identified a number of checks drawn on the partnership account by herself or Vickie, and ultimately Gail, in favor of Peoples Home Savings in full payment of the purchase money note; a series of deposit slips showing deposits of all rentals from the property in the partnership account; and income tax returns which she and her husband filed for 1969, 1970, 1971, and 1972, in which she declared one fourth of the net income from the property as taxable income to her.

Appellant Sommers contends: (I) that under the facts and circumstances existing at the time the transfer of title to the property to Victor and Beulah Hergenreter, no resulting trust arose in favor of respondents; (II) that by execution of the unrecorded and undelivered deed, Victor and Beulah Hergenreter evidenced an intention to retain title and control of the property in themselves, thus defeating any concept of a resulting trust at the time of the transaction; (III) that a resulting trust, if any, in benefit of respondents is limited to 7.9% of the proceeds of the execution sale; (IV) that no other trust can exist under the facts and circumstances because the petition and evidence violate Sections 456.010, 442.380, and 442.400, RSMo 1969, requiring instruments purporting to create a trust to be in writing and recorded.

Appellant argues: (I) that the facts and circumstances do not satisfy the rule of the cases that a resulting trust must arise, if at all, at the instant the deed is taken and cannot be created by subsequent occurrences; that no resulting trust arose because the agreements between respondents and their parents were made by children who could not become legally obligated to comply with them, were at best "family agreements," should not have been considered, and the children's performance of them was subsequent to the time the deed was taken; (II) that no resulting trust arose because the unrecorded and undelivered deed and

the subsequent deed to Susan J. Moke showed that title was to pass to the children upon the happening of an event in the future "in case anything happened to us." Appellant asserts that "there was much controversy" about the source of funds of the children which were deposited in their Hergenreter partnership account to argue (III) that, at best, $1,250 of the purchase price of $15,750 was paid by the children which amounts to an interest in them of 7.9%, and that since the remainder of the purchase price came from the obligation of Victor and Beulah Hergenreter paid from rents received from the property, such additional sum should not be considered to increase their interest; (IV) that any agreement between respondents and their parents was not in writing and could not give rise to an express trust.

Examination of respondents' petition shows that although "express agreement" was used in describing the understanding between respondents and their parents, there was no attempt to plead an express trust. As previously determined, the petition is sufficient to plead a cause of action for a resulting trust; and, as recognized by appellant, the case was "tried on the theory of a resulting trust in favor of plaintiffs."

■ A resulting trust arises by operation of law from the facts in a transaction, and not by operation of an agreement. If the transaction is an express oral agreement providing for a conveyance of land, it becomes at once an express trust, and not a resulting trust; it cannot be established by parol evidence due to the prohibition of the Statute of Frauds. *Bender v. Bender,* 281 Mo. 473, 220 S.W. 929, 930[5] (1920). However, existence of an express oral agreement on the part of a grantee to hold land for the payor of the consideration does not destroy the resulting trust or cause the transaction to be judged as an attempt to create an express trust. *Decker v. Fittge,* 365 Mo. 139, 276 S.W.2d 144, 148[4–6] (1955); *Padgett v. Osborne,* 359 Mo. 209, 221 S.W.2d 210, 212[3] (1949); *Carr v. Carroll,* 178 S.W.2d 435, 437[3] (Mo.1944); *Mays v. Jackson,* supra; *Condit v. Maxwell,* 142

Mo. 266, 44 S.W. 467, 469 (1897); *Smithsonian Institute v. Meech,* 169 U.S. 398, 18 S.Ct. 396, 42 L.Ed. 793 (1898).

■ The evidence shows it was understood that respondents' parents would purchase the real estate in question and hold it for the benefit of their daughters, rather than to create an express trust for future conveyance of land. Such agreement showed the relationship of the parties, the nature of the transaction between them, and that the consideration of the transaction was paid by or was the obligation of persons other than those in whose name the deed was taken. The oral agreement confirmed the existence of a resulting trust and was not the vehicle of an invalid express trust. *Mays v. Jackson,* supra. See also 2 Bogert, Trusts & Trustees, §§ 454, 461 (1964); 3 Scott on Trusts, § 404.1 (1967).

■ Admission of evidence of the understanding or agreement between respondents and their parents is consistent with the rule that parol evidence is admissible to establish a purchase money resulting trust; and since one of the issues is the intent of the parties prior to and contemporaneously with acquisition of legal title to the property, existence of a resulting trust is strengthened by consistent oral understandings that the grantees have taken title on behalf of beneficiaries of the trust. *Decker v. Fittge,* supra; *Padgett v. Osborne,* supra; *Carr v. Carroll,* supra; *Davis v. Roberts,* 365 Mo. 1195, 295 S.W.2d 152, 156[6] (1956). Under these authorities the testimony of Victor Hergenreter and Susan Moke was admissible to show the intent and understanding between respondents and their parents that the parents purchased the property and took legal title for benefit of their daughters. Similarly, the unrecorded deed of July 10, 1968, was properly admitted on the issue and in confirmation of the intent and understanding of the respondents and their parents.

■ Missouri follows the general rule that where one pays the purchase price for land with legal title taken in another, a presumption arises that the latter holds the

property under a resulting trust for the payor. *Davis v. Roberts,* supra; *Carr v. Carroll,* supra; *Ferguson v. Stokes,* 269 S.W.2d 655 (Mo.1954); *Parker v. Blakeley,* 338 Mo. 1189, 93 S.W.2d 981 (1936); *Scott,* supra, § 440. This theory is founded on an assumption that one who provides purchase money intends to receive the benefit of the purchase and the law will imply that intention in absence of rebutting facts and circumstances. 2 Bogert, supra, § 454. Application of the rule is peculiarly appropriate where a child furnishes the purchase money, and for reasons of convenience, minority, or otherwise, title is taken in his parents. *Adams v. Adams,* 348 Mo. 1041, 156 S.W.2d 610, 614–615 (1941). In such circumstances, the presumption is that of a resulting trust in favor of the child as opposed to a presumption of gift or advancement. *Padgett v. Osborne,* supra, 221 S.W.2d l.c. 212; *Davis v. Roberts,* supra, 295 S.W.2d l.c. 156.

■ In accordance with the agreement and understanding at the time the property in question was acquired, respondents repaid their parents the $1,000 advanced for earnest money, paid the $1,250 remaining on the down payment from their savings, and paid the obligation of the $13,500 deed of trust securing the balance of the purchase price from funds derived by them from rental of the property. Thus, under the authorities, a resulting trust for the full value of the property arose in favor of respondents.

Contrary to appellant's assertion, there is no controversy concerning the source of funds in the "Hergenreter partnership account." Evidence shows that all monies in that account at its inception came from the four Hergenreter children. Victor Hergenreter "called for" payments of the savings accounts, but he did so at the request of his daughters.

■ The evidence through the testimony of Mr. Hergenreter and Mr. Bird also shows that the advance of the $1,000 earnest money by the parents was part of the agreement and understanding between respondents and their parents in order to avoid a loss of interest if the children's savings had been withdrawn earlier. There is no question that the advance was repaid after the transaction was concluded. Appellant's argument that the advance did not give rise to a resulting trust because repayment occurred subsequent to the transaction is contrary to the rule that where one establishes he has reimbursed the purchase price to the grantee pursuant to an agreement with the grantee to do so made prior to passage of legal title to the grantee, the payor is entitled to a resulting trust in his favor; i. e., where a grantee lends funds to the trust claimant for use in purchasing property, a resulting trust arises subject to repayment of the loan. *Meyer v. Meyer,* 285 S.W.2d 694, 700 (Mo.1956); *Scott v. Ferguson,* supra; Rest., Trusts 2d § 448 (1959); *Scott,* supra, § 448. In such situation, the result is the same as though the grantee lent the amount to the trust claimant who in turn paid the grantor, and the conveyance was made to the lender. Although the money is not paid directly by the trust claimant to the grantor, " * * it is paid for him by the [grantee] and the [trust claimant] is in substance the person who pays the purchase price." Rest., supra, comment a. By virtue of the loan, the money furnished for the purchase is deemed the trust claimant's and not the grantee-lender's. 5 Bogert, Trusts, § 74, Hornbook Series (1973).

■ Appellant's similar argument that payment of the deed of trust by respondents did not give rise to a resulting trust because payment occurred subsequent to the transaction is contrary to similar statement of the same rule, i. e., that where a trust claimant makes payments with respect to the land after passage of title but pursuant to a pre-conveyance agreement to do so, he is entitled to a resulting trust. *Shelton v. Harrison,* 182 Mo.App. 404, 167 S.W. 634, 638[9] (1914); *Crowley v. Crowley,* 72 N.H. 241, 56 A. 190, 192 (1903); Rest., supra, § 456, comment d; 2 Bogert, supra, § 456. A resulting trust arises if the grantee uses his own credit in the trust claimant's behalf and purchases the proper-

ty pursuant to a prior agreement that the trust claimant will exonerate the grantee and satisfy the indebtedness incurred. *Meyer v. Meyer,* supra; *Mays v. Jackson,* supra; *Scott v. Ferguson,* supra.

 *Crowley v. Crowley,* supra, has been recognized in Missouri decisions, e. g., *Adams v. Adams,* supra, *Cassity v. Cassity,* 240 S.W. 486 (Mo.App.1922), and is in point. Plaintiff son, age 17, made a down payment on a farm he desired to purchase. The seller refused to convey to a minor; plaintiff's father took legal title and executed a note and mortgage for the balance of the purchase price, all pursuant to an agreement between father and son that the son would make the payments on the note, which he did. The father died; plaintiff's stepmother refused to convey legal title to plaintiff, and he brought suit to establish a resulting trust. The stepmother argued that no resulting trust was possible because the full purchase price was not paid at the time of the transaction in that the plaintiff was not obligated on the note and his payments occurred subsequent to the transaction. The court rejected her argument and emphasized that if the son induced his father to execute the note and at the time of its execution agreed to pay it, a resulting trust arose by implication. "It matters not how it is paid—whether by money on hand or borrowed, or by the promise or obligation of the cestui que trust himself, or of some other person procured by him for the purpose." 56 A. l.c. 192. Unenforceability of the minor's promise to pay, if so, is immaterial because payment of the obligation has been made in full. *Crowley v. Crowley,* supra.

Appellant suggests that *Davis v. Roberts,* supra, is "closely analogous" and supportive of her position. However, trust claimant Davis, in contrast to the disabilities of the Hergenreter minors, was an adult livestock trader at the time the property in question was purchased and could have taken title in his own name and executed the deed of trust in his own right if his intent was to own the entire beneficial interest in the property. Also by way of distinction, it was noted that claimant Davis purchased rather than paid notes secured by the deed of trust, and "did not consider the notes * * to be his personal obligation and he had assumed no unconditional obligation to pay any of these notes." 295 S.W.2d l.c. 157.

Appellant's argument that the testimony of Victor Hergenreter with respect to the unrecorded deed showed that the property was to vest in the children upon the death of their parents overlooks the evidence which shows that the intention of respondents and their parents was that the children were immediately vested with the beneficial interest in the property at the time of its purchase. Ambiguity, if any, in Mr. Hergenreter's testimony was resolved by the court in favor of the deed being evidence of present interest in the children rather than ownership upon future happening. Cf. *Bender v. Bender,* supra, 220 S.W. l.c. 930[5], where no trust resulted in the grantees' children at the time the conveyance was made "but it was contingent upon the happening of an event in the future— the separation of their parents [grantees]."

Nor does the recorded deed to Susan J. Moke defeat a resulting trust in these circumstances, because the evidence surrounding it reinforces the understanding that the parents were holding legal title for their children during and because of their minority. *Adams v. Adams,* supra. Insofar as the evidence in this case shows, Mrs. Moke now holds the legal title to the property for the benefit of herself and her sisters.

Judgment affirmed.

All concur.