2008 VT 121

## Jane Weed v. Leah Weed, James Weed, Cynthia Weed, Benjamin Weed, Baxter Weed and Olivia Weed

[968 A.2d 310]

No. 07-338

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed August 29, 2008

Motion for Reargument Denied September 25, 2008

---

meant to refer to section IV of her brief, in which there appears a list of excluded evidence.

84

*Douglas D. DeVries*, Enosburg Falls, and *Michael Rose* (On the Brief), St. Albans, for Plaintiff-Appellant.

*George E. Spear II*, Swanton, for Defendants-Appellees.

¶ 1. **Skoglund, J.** This appeal arises out of an ongoing land dispute among members of the Weed family. Jane Weed appeals the trial court's rulings as to two intra-family land transfers involving Jane, her mother Leah, her brother James and sister-in-law Cynthia, and their children. We reverse.

¶ 2. The following facts were found by the superior court or are uncontroverted. In 1916, the Weed family acquired two contiguous parcels of land — a 103.4-acre tract in Enosburg, Vermont and a 63.6-acre tract in Sheldon, Vermont. When this dispute began in 1996, both parcels were owned by Leah and the late Leonard Weed.[*] Leah and Leonard had two children, Jane and James Weed. James is married to Cynthia Weed, and they have three adult children.

¶ 3. In 1996, Leah and Leonard's financial situation was poor and the Sheldon land went into tax sale. At the tax sale, Jane, James, and Cynthia were the high bidders and the plan was for Leah and Leonard to pay their back taxes and redeem the property. However, Leah and Leonard were unable to make these payments within the one year required by law. While Jane, James, and Cynthia's names all appear on the tax sale report, Jane alone paid for the land. Subsequently, the administrative assistant for the Sheldon town attorney asked Cynthia whose name should appear on the Sheldon land deed. Since she and James had not

---

[*] For purposes of clarity, we use the parties' first names.

paid any money, Cynthia told the town attorney to deed the land to Jane alone. Since receipt of the tax deed, Jane has paid the yearly real estate taxes on the land. The parties dispute whether James and Cynthia offered to repay Jane. The court's finding on this is inconclusive. The fact remains that Jane never received payment and no attempt was ever made to change the Sheldon land's title to reflect co-ownership.

¶ 4. In July 1999, Leah and Leonard deeded half of the Enosburg property to Jane and half to James and Cynthia, with Leah and Leonard each reserving a life estate and "the right to sell the subject property." Leonard died on December 24, 2000. Leah then executed a new deed in January 2001, purportedly transferring the Enosburg property in five equal shares to James, Cynthia, and their three children. Jane received nothing under this deed. The deed recited that "ten or more dollars" was exchanged for the land. However, the Vermont Property Transfer Tax Return accompanying the transfer indicated that no consideration was paid in the transaction. Due to an error that does not concern this case, a new deed was executed three days later. This deed contained the following language: "This conveyance supersedes a previous conveyance from Leonard W. Weed and Leah A. Weed to Jane Weed and James and Cynthia Weed, dated July 18, 1999." It further specified Leah's intention to "exclude her daughter Jane Weed."

¶ 5. Leah's attorney wrote to Jane explaining that Leah had exercised her reserved right to sell. He further noted that "[a]s it stands you have sole title in the Sheldon parcel. The value, according to the Town assessment, is approximately equal to one-sixth of the value of the Enosburg and Sheldon [p]arcels combined."

¶ 6. Jane was not pleased at having her interest in the Enosburg property extinguished. Jane's lawyer suggested to Leah's lawyer that the transfer was not a sale, but rather a gift unauthorized by the 1999 deed's reserved right to sell. At some point after questions concerning the nature of the purported sale surfaced, Cynthia paid Leah ten dollars.

¶ 7. Jane met with her mother and in September 2003 they executed a written sales agreement that provided that Leah would transfer to Jane twenty-two acres of the Enosburg property with a right of way in exchange for Jane transferring to Leah fifteen acres of the Sheldon property and whatever cash would be

necessary to make the two sides of the transaction equal in value. Jane gave Leah a $100 earnest money deposit. The property to be exchanged was described generally in the agreement and Jane agreed to pay to have the land surveyed. The exchange was to take place by September 2004 with no pro-ration of real estate taxes. However, in December 2003 Leah returned the $100 and announced that she was backing out of the deal.

¶ 8. In July 2004, Jane brought this action against Leah to enforce the land-swap agreement. Leah answered Jane's complaint, arguing that the terms of the land exchange were too vague to enforce, and counterclaimed, seeking a declaratory judgment that the 2001 transfer of land to James, Cynthia, and the grandchildren was a proper exercise of the 1999 deed's reserved right to sell, "without necessary monetary consideration." Additionally, Leah successfully moved to join James and Cynthia as defendants in Jane's suit and as plaintiffs in the counterclaim against Jane. James and Cynthia brought their own counterclaim based on the 1996 tax sale of the Sheldon property, claiming that Jane held two-thirds of the Sheldon property in trust for James and Cynthia because the parties intended to share ownership following the tax sale. The three grandchildren were also later added as defendants.

¶ 9. The parties' claims and counterclaims were heard by the Franklin Superior Court in a two-day trial. The court ruled that Leah's 2001 transfer of the Enosburg land to James, Cynthia, and the grandchildren was a valid exercise of the reserved right to sell. The court concluded that James and Cynthia's care for the aging Leah was adequate consideration to support a sales contract, and did not address whether the ten dollars alone would have been sufficient consideration to support a sale. The court further concluded that Jane, Cynthia, and James had purchased the Sheldon property together, and that Jane was unjustly enriched by retaining sole ownership of it. The court therefore placed two-thirds of the Sheldon property in a constructive trust for the benefit of Cynthia and James. Furthermore, the court ruled that because Jane did not have sole ownership of the Sheldon property, she could not transfer that property to Leah. The court thus declined to rule on whether the 2003 land-swap agreement was sufficiently definite as to be enforceable.

¶ 10. Jane presents two issues for our review. First, was Leah's 2001 transfer of the Enosburg property to James, Cynthia, and

the grandchildren supported by adequate consideration and a valid exercise of the reserved right to sell? Second, did the court properly impose a constructive trust on two-thirds of the Sheldon property for the benefit of James and Cynthia? We address each issue in turn.

¶ 11. The trial court concluded that the 2001 deed was "within the reservation of rights contained in the [1999 deed] because there was adequate consideration." "The existence of sufficient consideration for a contract is a question of law and is evaluated at the time the contract was formed." *Bergeron v. Boyle*, 2003 VT 89, ¶ 19, 176 Vt. 78, 838 A.2d 918. We review questions of law de novo. *Dep't of Corr. v. Matrix Health Sys.*, 2008 VT 32, ¶ 11, 183 Vt. 348, 950 A.2d 1201. We hold that the court erred as a matter of law when it concluded that the 2001 deed was a sale supported by adequate consideration.

¶ 12. In the 1999 deed, Leonard and Leah reserved "the right to sell the subject property in fee simple absolute or in any lesser fee during their natural lives, intending to reserve such power to each of them." Accordingly, the 2001 transfer is valid only if it constitutes a sale. See *Stasieczko v. Nichols*, 137 Vt. 112, 113, 400 A.2d 992, 993 (1979) (exercise of a reserved right is enforceable so long as right is exercised in accordance with conditions set forth in granting document); *Manley Bros. Co. v. Somers*, 100 Vt. 292, 296, 137 A. 336, 338 (1927) (conditional license to sell does not include transfer without consideration); *Parks' Adm'r v. Am. Home Missionary Soc'y*, 62 Vt. 19, 24-26, 20 A. 107, 108 (1889) (gift of property to private individual by life tenant invalid because granting document limited power of disposal to use for life tenant's needs and comfort or charitable donation).

¶ 13. We have frequently held that "[t]o constitute consideration, a performance or a return promise must be bargained for." Restatement (Second) of Contracts § 71(1) (1981). See, e.g., *Bergeron*, 2003 VT 89, ¶ 19; *Lloyd's Credit Corp. v. Marlin Mgmt. Servs., Inc*, 158 Vt. 594, 600, 614 A.2d 812, 815-16 (1992); *Ragosta v. Wilder*, 156 Vt. 390, 393, 592 A.2d 367, 369 (1991). Bargained-for consideration must induce a promise or performance, and not be a "mere pretense" of a bargain. Restatement (Second) of Contracts § 71 cmt. b. The parties here did not bargain for the recited sum of ten dollars. The trial record

contains no indication that the ten dollars induced the sale. The property transfer tax return stated that there was no consideration paid in the transaction. Leah did not wait for payment to execute the deed, and there is no indication in the record that she expected payment. The ten dollars was only paid when Leah's lawyer became concerned that the transfer would be recognized as a gift. In her counterclaim, Leah asked the court for a declaration that she "acted properly and with complete authority when she conveyed the said property to [James, Cynthia and their children] without necessary monetary consideration."

¶ 14. Despite these admissions and although no party argued the claim, the trial court found that services rendered to Leah by James and Cynthia constituted consideration. Although care for an elderly parent may constitute valid consideration, it does not in this case. Both parties must regard a bargained-for promise or act as consideration. *Philpot v. Gruninger*, 81 U.S. (14 Wall.) 570, 577 (1871). There is no indication in the record that either party regarded the caretaking as consideration, or that Leah transferred the Enosburg land to James and Cynthia in exchange for their caretaking. Whatever services James and Cynthia provided to Leah, those services did not constitute consideration so as to transform the gift of land into a sale. The court erred in injecting this notion into the case.

¶ 15. We are therefore persuaded that the purported exchange of consideration was a pretense, and that the transfer was a gift not authorized by Leah's reserved right to sell. Leah reserved a right to sell the Enosburg property, not a right to give it away. The 2001 deed is invalid and, therefore, the 1999 deed remains in effect.

¶ 16. We turn now to the issue of whether the lower court properly placed two-thirds of the Sheldon land in a constructive trust held by Jane for the benefit of James and Cynthia. We review equitable remedies, like the creation of a constructive trust, for a trial court's abuse of discretion. *Legault v. Legault*, 142 Vt. 525, 531, 459 A.2d 980, 984 (1983). This is a deferential standard that "requires a showing that the trial court has withheld its discretion entirely or that it was exercised for clearly untenable reasons or to a clearly untenable extent." *Quenneville v. Buttolph*, 2003 VT 82, ¶ 11, 175 Vt. 444, 833 A.2d 1263 (quotation omitted). We conclude that the trial court's imposition of a constructive trust cannot be sustained.

¶ 17. A court may impose a constructive trust when a party obtains some benefit that they cannot, in good conscience, retain. "It is a familiar principle of equity that a trust is implied whenever the circumstances are such, that the person taking the legal estate, whether by fraud or otherwise, cannot enjoy the beneficial interest without violating the rules of honesty and fair dealing." *Legault*, 142 Vt. at 529, 459 A.2d at 983 (quotations and citations omitted). Courts may employ constructive trusts to avoid unconscionable results and to prevent unjust enrichment. *Preston v. Chabot*, 138 Vt. 170, 174-75, 412 A.2d 930, 933 (1980). Unjust enrichment, in turn, only exists when a party improves his or her own position at the expense of someone else:

> [T]he equitable doctrine of unjust enrichment rests upon the principle that a man shall not be allowed to enrich himself unjustly at the expense of another. In other words, the inquiry is whether, in light of the totality of circumstances, it is against equity and good conscience to allow [a party] to retain what is sought to be recovered. Thus, whether there is unjust enrichment may not be determined from a limited inquiry confined to an isolated transaction. It must be a realistic determination based on a broad view of the human setting involved.

*Legault*, 142 Vt. at 531, 459 A.2d at 984 (quotations and citations omitted). Given the totality of the circumstances in this case, the trial court erred in imposing a constructive trust.

¶ 18. The trial court concluded that "Jane's retention of the Sheldon property constitutes unjust enrichment." The trial court looked to the intent of the parties at the time of the purchase of the property at tax sale. Although Jane, James, and Cynthia's names all appear on the 1996 tax-sale purchase form, and the three originally planned to own the property together, James and Cynthia contributed no money to the purchase, and Cynthia therefore agreed that Jane's name should appear on the deed as purchaser. Jane paid the full price for the property, and received the full title. She got exactly what she paid for — hardly an unjust enrichment.

¶ 19. The trial court created the constructive trust to "protect James and Cynthia's interests in the Sheldon parcel." However, the court also upheld Leah's 2001 transfer of the Enosburg property to James, Cynthia and the grandchildren,

finding that it was made in part because Jane owned the Sheldon land — and therefore one-sixth of the Weed family's property — in full. These findings by the court are inconsistent. Additionally, the record reveals that James and Cynthia were largely uninterested in the Sheldon property. That they may have eventually attempted to pay Jane for a portion of the purchase price after questions arose concerning the ownership of the Enosburg property does not support a finding that Jane was unjustly enriched at the expense of James and Cynthia. Having paid the full tax-sale purchase price and taxes on the property for approximately five years before James and Cynthia first allegedly proffered repayment, Jane's taking of title does not violate the rules of honesty and fair dealing. Jane was not unjustly enriched; the court erred in imposing a constructive trust on the Sheldon land.

¶ 20. We turn finally to the enforceability of the 2003 contract between Leah and Jane to swap twenty-two acres of the Enosburg land for fifteen acres of the Sheldon land plus cash. This issue was not reached by the trial court because it ruled that the constructive trust it had placed on two-thirds of the Sheldon property prevented Jane from contracting for the trade. Given our conclusion that Jane has retained full title in the Sheldon property and that the gift of the Enosburg property was invalid, the land-swap agreement is again at issue. We note the general rule regarding specificity in land transactions that "where only a portion of a larger tract of land owned by the seller is to be conveyed . . . instruments which do not definitely separate the portion to be sold from the tract remaining are insufficient." *Evarts v. Forte*, 135 Vt. 306, 310, 376 A.2d 766, 769 (1977). If Jane can show that the relevant instruments sufficiently delineate the Enosburg and Sheldon parcels for purposes of the exchange, it very well may be that the land-swap agreement is enforceable. However, we cannot apply this rule to the case absent fact-finding, which is the trial court's province. See *State v. Ford*, 2007 VT 107, ¶ 12, 182 Vt. 421, 940 A.2d 687 (remanding to allow trial court to make findings of fact because existing findings were insufficient for purposes of drawing a legal conclusion); *Waterbury Feed Co. v. O'Neil*, 2006 VT 126, ¶ 13, 181 Vt. 535, 915 A.2d 759 (mem.) (same). We therefore remand this case to the trial court to decide

in the first instance whether the 2003 land-swap agreement is enforceable.

*The court's ruling that the 2001 transfer of the Enosburg land was valid and the court's imposition of a constructive trust on two-thirds of the Sheldon land are reversed. The issue of whether the 2003 land-swap agreement is enforceable is remanded for proceedings consistent with this opinion.*