2009 VT 87

# Michael Gregoire v. Armand Gregoire and Janet Gregoire

[987 A.2d 909]

No. 07-432

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed August 14, 2009

*Joslyn L. Wilschek* and *Gail E. Westgate* of *Primmer Piper Eggleston & Cramer PC*, Montpelier, for Plaintiff-Appellant.

*Peter F. Langrock* and *Erin E. Ruble* of *Langrock Sperry & Wool, LLP*, Middlebury, for Defendants-Appellees.

¶ 1. **Dooley, J.** Michael Gregoire appeals from the trial court's order granting equitable relief to his parents Janet and Armand Gregoire in this property dispute. The court concluded that parents had named Michael as a joint tenant in a deed solely for estate planning purposes, and that under all of the circumstances, it would be inequitable to allow Michael to receive half of the rental income from this property during parents' lifetimes. Michael argues that the trial court misconstrued the law of unjust enrichment and constructive trusts, and that several of its key findings are not supported by the record. We agree with the trial court that Michael is not entitled to the relief he seeks, and we therefore affirm the trial court's decision.

¶ 2. The trial court found as follows. Armand owned and operated an automobile sales and repair business called "Armand's Auto Sales" as a sole proprietorship. He hired Michael as an employee of the business in 1982 when Michael graduated from high school. Michael received a salary and other compensation for his work. Michael lived with his parents from 1982, when he graduated from high school, until 2002, when he married. Parents paid for Michael's living expenses, and the business provided him with a vehicle.

¶ 3. In 1986, parents decided to purchase two acres of land with a commercial building located at 120 Swanton Road in St. Albans. They decided to hold title jointly with Michael so that he could receive the property upon their deaths. Parents made separate

provisions for their daughter at the same time "to keep things even within the family." Michael acknowledged that, at the time the deed was executed, parents stated that his name should be put on the deed "in case something happens to us." The deed transferred the property from the prior owners to "Armand Gregoire and Janet Gregoire, husband and wife, as tenants by the entirety, and Michael Gregoire, joint tenant with rights of survivorship."

¶4. Parents paid $15,000 as a down payment for the property. A mortgage was executed for $200,000, the balance of the purchase price, and all parties signed the mortgage. Michael had no intent to put money into the property personally. The parties had no intent that Michael would participate in the costs of the property or share in the profits from the use of the property: "All the benefits and obligations related to the property were assumed by Armand as owner of the auto sales business." For almost twenty years, Armand paid all of the expenses associated with the property, including the mortgage payments and property taxes. The rental income from the property went into Armand's business account, and this income was reflected in parents' tax returns.

¶5. Michael was twenty-one years old at the time of the purchase of this property. He had no money for a down payment. As noted above, he was living with his parents and earning approximately $10,000 per year. Michael never made any mortgage payments or paid any expenses associated with the property. The rental income was never included in Michael's tax returns. Michael's sole financial participation with respect to the property was to sign the promissory notes and mortgages in the original purchase and in a 1995 refinancing. Michael was required to do so only because the deed named him as a joint owner. In all transactions, and for all intents and purposes, 120 Swanton Street was part of Armand's solely-owned automobile business.

¶6. Initially, Armand operated the auto business on the 120 Swanton Street property. In 1987, the property was leased to a NAPA Auto Parts distributor for a ten-year term. In 1995, the parties borrowed additional funds to erect a second building on the site, and the auto sales business was moved back to 120 Swanton Street. The automobile business became unprofitable in later years, and Armand believed that this was largely due to Michael's poor business judgment. In 2005, Armand decided to retire and to liquidate his business. The sales of the inventory of

used cars failed to cover the amount due under the floor plan financing, and Armand sold other property that he owned to cover the deficiency, including a car wash and a family camp. Parents are now retired. They have no savings, and they depend on Social Security and the rental income from 120 Swanton Street to meet their living expenses.

¶ 7. With the closing of father's business in February 2005, Michael no longer had a job. For the first time in nineteen years, he demanded a half-share of the rental income from 120 Swanton Street. In July 2005, he filed a complaint for declaratory judgment, seeking a portion of the rents collected and the right to participate in all decisions related to the property. Parents filed a counterclaim, alleging that Michael had been named in the deed solely for estate planning purposes and that it was never intended that he would have a current interest in the property during parents' lifetimes.

¶ 8. Following a bench trial, the Franklin Superior Court concluded that parents were entitled to equitable relief. The court explained that, as a general matter, when a conveyance of land was made to one person and the purchase money was paid by another, a resulting trust was created for the use and benefit of the person who furnished the consideration. In this case, the court found it clear from the evidence that the parties intended that Armand would pay for the property and receive the rents as part of his wholly-owned car business, and Armand had in fact paid the expenses of the property for the prior nineteen years. The fact that Michael lost his job, the court continued, did not justify changing the parties' longstanding shared understanding that this property would be held for the benefit of parents during their lifetimes. The court thus exercised its equitable authority to enforce the parties' original agreement, notwithstanding the ownership interests specified in the deed, and it held that parents were entitled to all the income from this property while they were alive.

¶ 9. Michael appealed from this decision, arguing in part that the trial court erred by sua sponte imposing a resulting trust, as opposed to a constructive trust requested in parents' answer, without first giving him notice or the opportunity to present evidence and legal argument on the issue. A three-justice panel of this Court agreed that the parties should have the opportunity to present additional evidence and argument on whether a resulting

trust, or alternatively, a constructive trust, should be imposed. See *Gregoire v. Gregoire*, No. 2006-137 (Vt. Jan. 4, 2007) (unreported mem.). For this reason, we reversed and remanded for a new hearing.

¶ 10. Following a second hearing, the trial court again concluded that Michael was not entitled to relief because of parents' equitable interest in the property. It adopted the facts found by the first trial judge, finding them uncontradicted in the retrial, and added further findings. Instead of imposing a resulting trust, however, the court concluded that a constructive trust was appropriate given the parties' clear intent at the time of the conveyance and the general patina of injustice.

¶ 11. In reaching its conclusion, the court acknowledged that Michael had signed the mortgage and promissory notes for the property, but it also observed that Michael had never actually had to pay on these obligations, and that he owned few, if any, other assets to put at risk by signing the notes. The court also rejected Michael's assertion that he had done substantial work on the property without pay, finding Michael's evidence unpersuasive insofar as it was claimed to support his right to rental income. The court noted that while Michael had overseen the business while parents were in Florida during the winter, Michael was at all times acting as an employee and agent of his father, the owner.

¶ 12. The court stated that while there was no evidence of fraud, which was perhaps the more typical framework for finding a constructive trust, it was possible to infer that Michael was trying to renegotiate the transaction that he had lived under without complaint for almost two decades. The court noted that Michael was now married and employed while his parents were retired and dependent on the income from this property. Parents sought nothing more than to continue to manage the property, pay the expenses, and partially live on the income while they were alive. Under all of the circumstances, the court concluded that Michael would be unjustly enriched if he were to now receive one-half of the rental income from this property. The court thus found that Michael held his interest as a constructive trustee for the benefit of parents during parents' lifetimes. Michael appealed from this order.

■ ■ ¶ 13. We review the trial court's decision for abuse of discretion. *Weed v. Weed*, 2008 VT 121, ¶ 16, 185 Vt. 83, 968 A.2d

310 ("We review equitable remedies, like the creation of a constructive trust, for a trial court's abuse of discretion."). "This is a deferential standard that requires a showing that the trial court has withheld its discretion entirely or that it was exercised for clearly untenable reasons or to a clearly untenable extent." *Id.* (quotation omitted). Even assuming that parents were obligated to establish their right to equitable relief by clear and convincing evidence, we agree with the trial court that they met that burden here. See 7 R. Powell, Powell on Real Property ¶ 592[1], at 47-23 (2000) (stating that party who asserts that a resulting trust exists must establish facts by clear and convincing evidence); *id.* ¶ 595, at 48-17 (existence of constructive trust is question of fact for jury to decide, but facts must be proved by clear and convincing evidence). But see 5 A. Scott, Scott on Trusts § 462.6, at 327-30 (4th ed. 1989) (recognizing cases holding that party must establish facts giving rise to constructive or resulting trust by clear and convincing evidence, but stating that "[o]rdinarily . . . there would seem to be no good reason why such proof would be required.").

¶ 14. We conclude, as did the first trial judge, that this is a classic case of a resulting trust. As a result, we do not go further than that equitable device to resolve this controversy.

█ ¶ 15. We have recognized at least since *Pinney v. Fellows* "that when one person purchases an estate in lands with his own money and takes the deed in the name of another, a trust results, by operation of law, to the person paying the consideration." 15 Vt. 525, 538 (1843) (describing this doctrine as a "familiar principle in equity law"); see also *Tokarski v. Gates*, 138 Vt. 220, 222, 414 A.2d 1155, 1156 (1980) (stating general rule); Restatement (Second) of Trusts § 440 (1959) (same). The legal title holder will then "hold the same for the use and benefit of the person paying the money" as a resulting trust. *Dewey v. Long*, 25 Vt. 564, 568 (1853). To have effect as a resulting trust, "the consideration, or some part of it, which was paid for the land, must [be] furnished by the [plaintiff] *at the time* of the purchase." *Pinnock v. Clough*, 16 Vt. 500, 506 (1844).

█ ¶ 16. Resulting trusts frequently arise, as here, in instances where the legal title is transferred to a spouse or child. In such circumstances, it is presumed that the legal interest was transferred as an inter vivos gift and, therefore, no trust results. See *Bickford v. Estate of Bickford*, 68 Vt. 525, 528, 35 A. 471, 472

(1896); *Bent v. Bent*, 44 Vt. 555, 559 (1872); *Wallace v. Bowen*, 28 Vt. 638, 640 (1856). The presumption may, however, be rebutted by a showing that the intent of the parties was otherwise. See *Bickford*, 68 Vt. at 528, 35 A. at 472. In this case, the court found by clear and convincing evidence that the presumption was rebutted and no gift was intended. See *Brousseau v. Brousseau*, 2007 VT 77, ¶¶ 7-8, 182 Vt. 533, 927 A.2d 773 (mem.) (lack of donative intent to transfer inter vivos interest in land, as specified in a deed, may be shown by evidence of purpose to avoid probate on death of the transferor); *Mizzi v. Mizzi*, 2005 VT 120, ¶ 6, 179 Vt. 555, 889 A.2d 753 (mem.) (same); see generally Restatement (Second) of Trusts, *supra*, § 440 cmt. f (resulting trust may arise during lifetime of trust beneficiary if intent is that trustee will have beneficial interest after the death of the beneficiary). Michael does not contest that finding and conclusion; indeed his argument as presented to the trial court was more that he was in a joint venture with his parents. Thus, there is no barrier to a resulting trust arising here because of the relationship between Michael and his parents.

¶ 17. Although our cases have generally involved circumstances where legal title was entirely deeded to the alleged trustee, a resulting trust can arise as a result of the transfer of a part interest in the property. See 5 A. Scott, Scott on Trusts § 441.4, at 167-68. Thus, the fact that Michael has a joint interest in the property, rather than legal ownership of the entire fee, is not a barrier to the establishment of a resulting trust with respect to the legal interest that he holds.

¶ 18. The main dispute in this case relates to the requirement that the beneficiary of the resulting trust supply the consideration. Michael argues that Armand did not put up all the consideration because Michael signed the note and the mortgage financing the purchase of the property and later signed equivalent documents for the refinancing. Thus, he argues that he put up part of the consideration for the purchase of the property and this provision of consideration, however small, is sufficient to defeat the application of a resulting trust. He argues that this is the holding of *Tokarski*, which is a binding precedent in his favor.

¶ 19. In addressing this argument, it is critical to return to the findings of the trial judges. Although Michael signed the note and mortgage in each instance, there was no intent or

expectation that he would ever make the payments on the notes. That obligation was assumed entirely by Armand. In such circumstances, the decisions from courts in other jurisdictions uniformly hold that the trustee's theoretical financial obligation does not defeat the resulting trust. See, e.g., *Farrah v. Farrah*, 446 A.2d 1075, 1078-79 (Conn. 1982); *Haliday v. Haliday*, 11 F.2d 565, 568 (D.C. Ct. App. 1926); *Cook v. Blazis*, 7 N.E.2d 291, 293 (Ill. 1937); *Davis v. Downer*, 97 N.E. 90, 91-92 (Mass. 1912); *Hergenreter v. Sommers*, 535 S.W.2d 513, 519 (Mo. Ct. App. 1976); *Crowley v. Crowley*, 56 A. 190, 192 (N.H. 1903); see generally Restatement (Second) of Trusts, *supra*, § 456 cmt. f (obligation of alleged trustee on the mortgage does not create a beneficial interest); 5 A. Scott, Scott on Trusts § 456.2, at 275; A. Scott, *Resulting Trusts Arising Upon the Purchase of Land*, 40 Harv. L. Rev. 669, 703-09 (1927). As the Supreme Judicial Court of Massachusetts has explained, the obligation of the trustee is "the equivalent of a loan of credit by the grantee for the benefit of persons paying for the purchase." *Davis*, 97 N.E. at 92; see also *Gerace v. Gerace*, 16 N.E.2d 6, 9 (Mass. 1938); *Crowell v. Stefani*, 428 N.E.2d 334, 335 (Mass. App. Ct. 1981). That loan may affect the obligations between the parties, but does not prevent the application of a resulting trust.

■■■ ¶ 20. We do not believe that *Tokarski* is to the contrary. In that case, two friends bought a lot of land, each taking a half interest. The plaintiff paid the down payment and both gave a note and mortgage for the remainder of the price. The plaintiff then made the payments on the mortgage and the defendant paid the taxes. The trial court found that no resulting trust was created in favor of the plaintiff. This Court concluded that the defendant put up consideration through signing the note and mortgage, as Michael emphasizes here, but the real holding is based on the fact that the plaintiff testified that the intent was that he would receive only a half interest even though he sought in the litigation a resulting trust for the entire property. See *Tokarski*, 138 Vt. at 222-23, 414 A.2d at 1157. On this basis, this Court affirmed the trial court conclusion. In essence, we held that a resulting trust will not be created where the intent of the parties was that the legal and equitable ownership of the property would be the same. See Restatement (Second) of Trusts § 456 cmt. c (no resulting trust arises if the alleged beneficiary manifests an

intent that the alleged trustee will have a beneficial interest in the property).

¶ 21. *Tokarski* is similar to *Moat v. Moat,* 17 N.E.2d 710, 712 (Mass. 1938), a resulting trust case where the Massachusetts Supreme Judicial Court concluded that the alleged trustee's assumption of a personal obligation to pay back a purchase-money loan was not intended to be a loan of credit to the alleged beneficiary of the loan. The court in *Moat* emphasized that although the alleged beneficiary had made payments on the note, there was no understanding at the time of the property purchase that the alleged beneficiary, rather than the alleged trustee, would make such payments. *Id.* It is the presence of such an understanding in this case that distinguishes it from *Tokarski,* just as it distinguished *Davis* from *Moat.*

¶ 22. The Restatement recognizes that in cases where part of the purchase price for land is paid in cash by someone other than the grantee, and the balance is secured by a purchase-money mortgage, the fact that the grantee "executes the mortgage and incurs an obligation to the vendor for the balance of the purchase price does not of itself entitle him to a beneficial interest in the property." Restatement (Second) of Trusts, *supra,* § 456 cmt. f. In such cases, "the inference is that the other person, who is the real purchaser, undertakes to exonerate the transferee from any liability to pay the vendor the deficiency if on foreclosure of the mortgage the property should be insufficient for the payment of the balance of the purchase price." *Id.*; see also *id.* cmt. c (similar result in cases where the obligation to pay the purchase price to the vendor is undertaken jointly by the transferee and the other person, if the understanding between them is that the other will discharge the obligation to the vendor).

¶ 23. Finally, Michael makes much of his alleged joint management of the property as evidence that the entire beneficial interest was not parents'. Again, the findings are against him. The trial court found that Michael's work in the business was as an employee and agent of Armand, and that he had no ownership interest in the business. These findings are supported by the evidence, and we must uphold them. Moreover, we must view the transaction at the time of the purchase of the property. See *Pinnock,* 16 Vt. at 506. While evidence of later actions may be relevant to show the understanding at the time of the purchase of

the property, they are not otherwise probative. Here, the trial court explicitly found that the understanding at the time of the purchase was that Armand assumed the obligation to make all payments for the property and would receive all income from the property. Again, the evidence supports these findings.

¶ 24. Because we hold that Michael holds his legal interest in the property as a trustee of a resulting trust with his parents as beneficiaries, we need not reach whether a constructive trust should also be declared. As the holders of the equitable title, parents are entitled to the use and benefit of the property. *Tokarski*, 138 Vt. at 222, 414 A.2d at 1156. Thus, the superior court properly denied Michael a share of the rents from the property and control over decisions with respect to the property.

*Affirmed.*