Vermont Superior Court
Filed 05/19/26
Washington Unit

VERMONT SUPERIOR COURT

Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 24-CV-04496

---

**Quinn McDonagh, Trustee of the Luellen McDonagh Real Estate Trust Dated October 21, 2016 v. Damian Renzello**

---

## ENTRY REGARDING MOTION

Title:        Motion for Summary Judgment  (Motion: 3)
Filer:       Jon D. Valsangiacomo
Filed Date:  April 10, 2026

The motion is GRANTED IN PART.

Plaintiff, Quinn McDonagh, in her capacity as Trustee for the Luellen McDonagh Real Estate Trust seeks summary judgment in this ejectment action on the issue of possession under 12 V.S.A. § 4854 on the basis that Defendant Damian Renzello is, effectively, a tenant and that his tenancy has been properly terminated in compliance with 9 V.S.A. § 4467 (c).  Defendant Renzello opposes this motion, but the bulk of his opposition is focused on re-litigating some of the prior ownership issues and on the question of unjust enrichment.  For the reasons outlined below, the Court finds that Plaintiff is entitled to judgment on the issue of possession but due to the outstanding issues of unjust enrichment, the Court will not issue a writ of possession at this time but will move forward to a trial to resolve these outstanding issues with a final judgment in both the present ejectment action and the related quiet title/unjust enrichment action that Defendant Renzello filed.  *Renzello v. Browning*, Dckt. No. 24-CV-4159.

**Background Facts**

As a preliminary matter, the Court must determine what facts may be considered as part of the record for the present motion.[1]  In its initial filing for summary judgment, Ms. McDonagh included a separate and concise, 14-paragraph statement of undisputed material facts.  Each paragraph was supported by citations to affidavits or specific admissible evidence.  V.R.C.P.

---

[1] As noted in the last paragraph, the present matter is related to a separate action filed by Mr. Renzello against Ms. McDonagh and other parties concerning the issue of ownership of the 1325 Route 14 property. *Renzello v. Browning*, Dckt. No. 24-CV-4159.  The Court has taken judicial notice of that docket and the decisions rendered in that matter.  *Doe v. Camacho*, 2024 VT 72, ¶ 2, n.1 ("A court may take judicial notice of the docket entries in a separate, related case.").

1

56(c)(1). In his response, Mr. Renzello did not, as required under Rule 56(c)(2), file a response to Ms. McDonagh's statement or provide any specific citations to affidavits or any other admissible evidence that would indicate a factual basis to dispute any of the listed facts. Based on the lack of dispute, Ms. McDonagh's Statement of Undisputed Material Facts is deemed admitted for the purposes of this motion and shall largely control the Court's review of the factual issues. V.R.C.P. 56(e)(2); *Caldwell v. Champlain College, Inc.*, 2025 VT 17 ¶ 9.[2]

Based on this determination, the Court finds the following to be undisputed material facts. The property at issue is 2.10-acre parcel of land and improvements located at 1325 Vt. Route 14 South, East Montpelier, Vermont. Plaintiff McDonagh, in her capacity as Trustee of the Luellen McDonagh Real Estate Trust, is the sole owner of this property. Ms. McDonagh took title to the property from her mother, Luellen McDonagh, who created the Real Estate Trust bearing her name and deeded the property into the Trust in October 2016. Luellen McDonagh obtained title to this property in November 2001 from her mother, Patricia Renzello, who purchased the property solely in her name in August 2000.

Damian Renzello, who is Patricia Renzello's son and Luellen McDonagh's brother, has lived at the property since August 2000. He has never paid rent to any owner. For the majority of his time, he lived with his mother in a mobile home on the property. Since Ms. Renzello's passing, Mr. Renzello has continued to live in the mobile home by himself.

While there is no dispute that Ms. Renzello received a life estate to continue to live on the property, there is no evidence that Mr. Renzello received such a license or grant. Ms. Renzello passed away in 2022, which ended her life estate. Since Ms. Renzello's death, Ms. McDonagh has considered Mr. Renzello to be a tenant, albeit one who does not pay rent. On July 14, 2024, Ms. McDonagh served a notice of "no cause" termination, pursuant to 9 V.S.A. § 4467(c) on Mr. Renzello. Mr. Renzello received the notice on July 19, 2024. The date of the termination was October 31, 2024. This gave Mr. Renzello 104 days of notice between actual receipt of the

---

[2] Mr. Renzello is self-represented in this matter, and while the Court will grant him leeway with some of his filings, he is still obligated to follow the Rules of Civil Procedure, and the Court is obligated to apply these rules fairly with both parties. *Zorn v. Smith*, 2011 VT 10, ¶ 22 (noting that self-represent parties are "still bound by the ordinary rules of civil procedure") (quoting *Valteich v. Knott*, 139 Vt. 588, 591 (1981)).

notice and the termination date. Section 4467(c) only requires notice for 90 days. Mr. Renzello has remained at the property past the expiration of the termination notice.

The Court has re-reviewed Mr. Renzello's theory of ownership in docket no. 24-CV-4159. In its January 22, 2026 decision on Ms. McDonagh's motion for summary judgment, the Court rejected Mr. Renzello's theories of ownership. The problem with Mr. Renzello's claims for ownership remains that there is simply no credible and admissible evidence that has been brought before the Court to show that Mr. Renzello ever held an ownership interest in the property. Furthermore, there is no evidence to support an implied trust or any other ownership interest in the property.[3] Despite Mr. Renzello's arguments, the record title to the property is fairly straightforward, and there are no contemporary writings, agreements, or evidence that would support a claim of ownership for Mr. Renzello either in whole or in part.

## Standard of Review

Vermont Rule of Civil Procedure 56 governs motions for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." V.R.C.P. 56(a). See *Gross v. Turner*, 2018 VT 80, ¶ 8, 208 Vt. 112; *Gilman v. Maine Mut. Fire Ins. Co.*, 2003 VT 55, ¶ 7, 175 Vt. 554. The moving party must support its assertion with numbered paragraphs with

---

[3] Defendant has not pled or argued for an implied trust in either the present matter or the related docket. Even if the Court were to consider this doctrine, there is no basis in the factual record, either before the Court, or in Mr. Renzello's filings that would trigger the imposition of a trust as neither Plaintiff McDonagh, nor her immediate predecessor in title are alleged to have committed a wrongful act or fraud that would trigger such equitable considerations or directly received any enrichment from the contributions that Mr. Renzello claims. See *Preston v. Chabot*, 138 Vt. 170, 173–75 (creating an implied trust to prevent a murderer from inheriting property from his victim); *Weed v. Weed*, 2008 VT 121, ¶¶ 17–20 (noting that implied trusts can arise where there is fraud or other action that offend good conscience but rejecting the application of the doctrine where parties knowingly made a decision to deed land to one family member and not others). Specifically, Mr. Renzello has claimed that his mother bought a house in Barre, Vermont in the late 1990s that he rehabilitated, and that as a result of his efforts and labor, his mother realized a profit from the sale of the Barre house. She then used those funds to purchase the East Montpelier property in her name. Even if the Court credited these facts, which have not been established, the equitable considerations go to Ms. Renzello, who received the benefit, and not to the present owner who was not a party to the Barre rehabilitation project or its proceeds. Moreover, Mr. Renzello admits that he was aware that his mother had transferred the East Montpelier property to Ms. McDonagh's mother in 2001 and never sought to clarify or assert his claims of ownership until 23 years later when he filed his quiet title action. See *Weed*, 2008 VT 121, ¶¶ 18, 19 (finding no basis for a constructive trust when one family member put a parcel solely in her name while paying the purchase price with her funds when the other family members were expecting a share )

3

references to materials in the record.  V.R.C.P. 56(c)(1).  The nonmoving party must show that the material facts are in dispute.  *Boyd v. State*, 2022 VT 12, 275 A.3d 155.  The nonmoving party does this through introducing their own admissible evidence.  *Gross*, 2018 VT at ¶ 8.  Additionally, the court gives the nonmoving party the benefit of reasonable doubts and inferences.  *Brousseau v. Brousseau*, 2007 VT 77, 182 Vt. 533.  If the court determines there are no genuine issues of material fact, the court will grant summary judgment.  V.R.C.P. 56.

## Legal Analysis

The primary question before the Court is to identify what type of interest Mr. Renzello has in the East Montpelier Property.  While Mr. Renzello does not have an ownership interest in the property, it is undisputed that he has resided at the property for the past 26 years.  During that time, he has not paid rent.  Prior to 2016, there is no evidence that he asserted any possessory rights in the property.  Prior to 2022, Mr. Renzello lived in the mobile home on the property that he shared with his mother, who had a life estate.  Since 2022, Mr. Renzello has continued to reside in the mobile home with the permission of Ms. McDonagh, until her notice of termination in 2024. [4]  While there is a factual dispute as to what Mr. Renzello has contributed to the property, there is some evidence suggesting that he has paid some property taxes and he has done some maintenance.  There is no evidence of any consistent consideration being exchanged between the parties.

From these facts, there are potentially three legal theories that define Mr. Renzello's relationship with the property and to the various owners.

The first theory is that Mr. Renzello was a licensee/invitee.  Under Vermont law, a licensee "is one who merely 'enters or remains on land with the consent of the landowner.'" *Demag v. Better Power Equipment, Inc.*, 2014 VT 78, ¶ 12 (quoting *Menard v. Lavoie*, 174 Vt. 479, 480 (2002) (mem.)); see also 3 TIFFANY REAL PROP. § 829 (3d ed. 2025).  While this label fits the permissive nature that marked the beginning of Mr. Renzello's occupancy, it does not fully capture the nature of Mr. Renzello's occupancy.  Since 2000, he has used the property as

---

[4] The Court addressed Mr. Renzello's adverse possession arguments in its January 22, 2026 decision in Docket No. 24-CV-4159, at 5–7.  The Court rejected the arguments, and there has been no subsequent evidence that would merit any revisiting of this claim in the present decision.

4

his primary residence, has contributed both money and upkeep, and has occupied and possessed the property.

This leads to the second possible theory that Mr. Renzello was a tenant at will. Such a tenancy arises when a party, with permission of the owner, begins to occupy the property without any additional agreement or rights. See *Rich v. Bolton*, 46 Vt. 84, 88 (1873) (noting that a party being allowed into possession without special agreement as to rent and permitted to occupy would be a tenant-at-will); see also 1 TIFFANY REAL PROP. § 155 (noting that a tenancy includes a right of exclusive possession and the right to assert an action of trespass or ejectment against third parties). While this label fits the general nature of Mr. Renzello's occupancy, it does not fully address the nature of Mr. Renzello's occupancy, which was for the bulk of its tenure, functionally a part of his Mother's life estate. In this respect, the Court finds there were times when Mr. Renzello's occupancy was simply accepted as part of his Mother's occupancy and was not treated in the conventional ways that follow from a tenancy.

Finally, the third possible theory is that Mr. Renzello, whether licensee or tenant at will, became a tenant at sufferance. Such a tenancy is created when a person who previously had permission to enter the property, remains in possession without right to continue. *Patch v. Keeler*, 27 Vt. 252, 257 (1854); see also 1 TIFFANY REAL PROP. § 174 ("The defining characteristic of a 'tenancy at sufferance' is the lack of the landlord's consent to the tenant's continued possession of the premises; with the owner's consent, the holdover tenant becomes a tenant at will, and without it, the holdover tenant becomes a tenant at sufferance."). Again, while this label may be apt for certain portions of Mr. Renzello's occupancy, it does not accurate apply to his situation, particularly any occupancy, prior to 2022.

Yet, whether the Court labels Mr. Renzello's occupancy as a license, a tenancy at will, or a tenancy at sufferance, there is very little difference in the outcome. As Justice Powers noted:

> It matters little what name we give to the remedy given by section 1321, R. L., for the recovery of the possession of leased lands held "without right" by a lessee. Some courts call it one thing; some another. But
>
> > "What's in a name? That which we call a rose by any other name would smell as sweet."

> This statute gives a summary remedy to persons entitled to the possession which is wrongfully withheld, and was intended as a substitute for the technical procedure of the common law action of ejectment.

*Horan v. Thomas*, 60 Vt. 325, 28–29 (1888) (quoting WILLIAM SHAKESPEARE, ROMEO & JULIET, Act II, Scene II).

The point is that individuals who are in possession and occupancy have certain rights before they can be removed from their place of occupancy. Generally, these may be grouped as (1) rights associated with notice and (2) right to remove a person from the property. For the first criteria, the Vermont Residential Rental Act is designed to give tenants a certain level of notice in terms of time to vacate and reasons for terminating the tenancy. 9 V.S.A. § 4467. The range of notice can be as short as 14 days for non-payment of rent to as long as 90 days for no cause termination of a long-term tenant without a written lease. See Id. at (a), (c). Outside of some type of private agreement, these provisions represent the highest levels of notice and apply to most residential leases where the tenant is exchanging consideration for occupancy. 9 V.S.A. §§ 4451, 4453.

Outside of the Vermont Residential Rental Act, the common law requirements of notice are substantially lower without express contract provisions. See *Mayo, Adm'x v. Claflin*, 93 Vt. 76, 78–79 (1919) (noting that a tenant at will "may be turned out without notice to quit"). The provisions for licensees are even more limited. 3 TIFFANY REAL PROP. § 836 ("A license may be revoked either by express words to that effect, or by an act of the licensor indicating an intention to revoke, as when he makes exercise of the license impossible.").

In this case, the record indicates that Ms. McDonagh has complied with the higher level of notice under the Vermont Residential Rental Act. 9 V.S.A. § 4467(c). Therefore, however, the Court classifies Mr. Renzello's occupancy, Ms. McDonagh's notice of termination is more than sufficient, and the Court concludes as a matter of law that Ms. McDonagh has properly terminated Mr. Renzello's right to occupy and possess the East Montpelier property. On this basis, Ms. McDonagh is entitled to summary judgment on the issue of possession. 12 V.S.A. § 4854.

As to the right to remove, modern ejectment law has shortened the period of time allowed to remove from the property. Under 12 V.S.A. § 5854, upon a judgment for ejectment, the owner is entitled to a Writ of Possession to execute no less than 14 days after initial service. 12 V.S.A. § 5845. Under the common law, however, tenants were "entitled to a reasonable time after the termination of tenancy in which to procure other accommodations and remove[] property." *Toussaint v. Stone*, 116 Vt. 425, 429 (1951).

Given the ambiguity of Mr. Renzello's underlying status, the Court finds that adopting a reasonable removal framework from the common law is more equitable than an immediate writ of possession. In addition to the ambiguity, there is the additional issue of unjust enrichment, which the Court will address briefly below. To this end, the Court will not issue the writ of possession at this time. Instead, the Court will hold this judgment until final judgment can be issued following the contested hearing on the unjust enrichment claims sought by Mr. Renzello in both this docket and docket 24-CV-4159. This is presently set for a pre-trial conference on June 16, 2026. At that time, the Court will discuss trial dates with the parties and the scope of what remains to be determined.

This leaves the issue of unjust enrichment. Plaintiff argues in her brief that there is no evidence of unjust enrichment. This contention is primarily premised on case law holding that improvements done by a tenant to a premises rarely constitute unjust enrichment when the landlord has not done anything illegal or inequitable. *Lasek v. Vt. Vapor, Inc.*, 2014 VT 33, ¶ 18. The problem with Plaintiff's argument is tied up with the Court's prior analysis. For much of his occupancy of the property, Mr. Renzello's status does not fit into the neat box of a tenant. He was not occupying the property pursuant to a lease. While his occupancy may have simply been a license, there is, on the present record, no proof that there was an expectation for Mr. Renzello to pay rent or any informal arrangement where he was expected to contribute.

The doctrine of unjust enrichment is straightforward. If a party confers a benefit on another party, who accepts the benefit, and who retains the benefit "under such circumstances that it would be inequitable for defendant not to compensate plaintiff for its value," then there is unjust enrichment. *Beldock v. VWSD, LLC*, 2023 VT 35, ¶ 68.

7

The Court understands Mr. Renzello has made certain property tax payments and performed certain maintenance. To the extent that these actions prove to have benefited the property under Plaintiff's ownership, then she may be obligated to compensate Mr. Renzello for these benefits. There are, however, three unanswered questions that a trial is needed to resolve. The **first** is to what extent such benefits rendered to Luellen McDonagh may be included in this claim given that Plaintiff's ownership in trust resulted from Luellen McDonagh dedicating the property to the trust, rather than a sale to a bona fide third-party purchaser. **Second** is whether the six-year-statue-of-limitations for civil claims should act as a limit on any claims of unjust enrichment. 12 V.S.A. § 511. **Third** is whether there are inequitable grounds in Plaintiff's retention of any benefits rendered by Mr. Renzello to her or her immediate predecessor.

Missing from this list of unjust enrichment claims are two claims that Mr. Renzello has championed in his briefing but that do not comply with elements of unjust enrichment. The first is Mr. Renzello's claim that because he did improvements to a prior property that was sold and the proceeds of which were used to purchase the East Montpelier property, then he should receive some credit because his work effectively created the consideration for his mother to purchase the property. As noted above, a benefit must be rendered on the party against whom the unjust enrichment claim is asserted. *Beldock*, 2023 VT 35, at ¶ 68. In this case, Mr. Renzello cites work done on a property that neither Ms. McDonagh, nor Luellen McDonagh owned. The benefit, increasing the value of the Barre house, went to Ms. Renzello alone, who was able to sell the house for a profit and purchase the present property. Mr. Renzello's argument that this benefit has somehow carried down to Ms. McDonagh is simply too attenuated. The benefit was given to and accepted by Ms. Renzello. The elements of unjust enrichment do not allow Mr. Renzello to continue to seek this benefit from successor entities who have taken title to the property as they did not receive or accept the benefit. *In re Estate of Elliott*, 149 Vt. 248, 252–53 (1988) (finding no unjust enrichment where benefit was not conferred on Defendant).

Somewhat related to this claim of credit is the issue of value. Mr. Renzello contends that he is entitled to a portion of the value of the property. This arises from his "but for" reasoning. Mr. Renzello contends that but for his encouraging his Mother to purchase the Barre property and but for his rehabilitation of that property, she would not have had the money to buy the East

8

Montpelier property, and "but for" her purchase, then Luellen McDonagh would not have received the property from Ms. Renzello and would not have transferred it to Ms. McDonagh by trust. Again, this reasoning is inconsistent with the limited remedy of unjust enrichment and is simply too attenuated.

The problem was and remains that Mr. Renzello did not own the property in 2000 or 2001 when it was deeded to Luellen. There is no evidence of an agreement or circumstances that would support the inference that Luellen took title with the implication that she was accepting a benefit from Mr. Renzello. *Beldock*, 2023 VT 35, at ¶ 72 ("[A] claimant generally cannot compel the recipient to pay for benefits voluntarily conferred if, had the transaction been proposed as a contract, the recipient would have been able to reject it.") (citing Restatement (Third) of Restitution and Unjust Enrichment § 30 (2011). This is further complicated by the fact that this transaction took place over 25 years ago and that at least two of the people involved have passed. As such, the Court cannot award any value in the property to Mr. Renzello under a theory of unjust enrichment.

**ORDER**

In light of this analysis, the Court concludes that Plaintiff Quinn McDonagh is entitled to judgment on the issue of Possession under 12 V.S.A. § 4854 based on the sufficient notice to terminate Defendant Damian Renzello's possession and occupancy of the property under 9 V.S.A. § 4467(c) as the most protective of Mr. Renzello's status as a tenant/licensee/tenant at sufferance. Given that this termination is coming at the end of a 26-year occupancy and given Mr. Renzello's somewhat ambiguous status as a tenant/licensee/tenant at sufferance, the Court finds it both reasonable and fair to hold off on the issuance of a writ of possession until the unjust enrichment claims can be tried. Therefore, Plaintiff's motion for summary judgment is **Granted**, but the relief sought in terms of a writ of possession shall be withheld until final judgment at the end of the present action.

Finally, the Court also rules that to the extent Defendant Renzello's unjust enrichment claims can go forward, they are limited to evidence of benefits rendered directly on Ms. McDonagh or Luellen McDonagh. The Court invites the parties at trial to brief the question of whether the Court can consider benefits rendered by Mr. Renzello onto Luellen McDonagh and

9

whether 12 V.S.A. § 511 should apply to any unjust enrichment claims. To the extent that Mr. Renzello seeks to either claim monetary benefits from his contributions to his Mother's purchase of the property or any resulting increase in value to the property since the 2000 purchase, these claims are not allowed under the elements of unjust enrichment. *Beldock*, 2023 VT 35, at ¶ 72.

This matter is set for a pre-trial conference on June 16, 2026.

Electronically signed on 5/19/2026 11:01 AM pursuant to V.R.E.F. 9(d)

_____
Daniel P. Richardson
Superior Court Judge